Vincent MASTRONI, Plaintiff,

v.

Otis R. BOWEN, M.D., Secretary of HHS, Defendant.

Civ. No. 85–0053.

United States District Court, District of Columbia.

Oct. 30, 1986.

Burton L. Raimi and Robert M. Clark of Dechert Price & Rhoads, Washington, D.C., for plaintiff.

Claire M. Whitaker, Asst. U.S. Atty., Washington, D.C., for defendant.

## OPINION

CHARLES R. RICHEY, District Judge.

This is an action under 42 U.S.C. § 405(g) to review the Secretary of Health and Human Services ("the Secretary") decision denying plaintiff's claim for disability insurance benefits under Title II of the Social Security Act ("the Act"). Upon review of the pleadings and the transcript of the record, the Court holds that the Secretary's decision is not supported by substantial evidence and is hereby reversed.

## I. BACKGROUND

Plaintiff was born on July 4, 1928, and is a high school graduate. From February 14, 1946, through June 30, 1966, plaintiff served in the United States Army. Since retiring on July 1, 1966, plaintiff has resided in West Germany. From November, 1966, until December, 1968, plaintiff worked as a cashier in the United States Army N.C.O. Club Lenggries Kaserne. In 1969, plaintiff packed and carried groceries at the United States Army Commissary at Flint Kaserne, Bad Toelz, West Germany. From 1969 until July, 1978, plaintiff did light factory work for several German companies.

In June, 1969, plaintiff began to experience constant pain in his lower back and left leg, causing him to seek regular treatment at the United States Army Health Clinic in West Germany. Ultimately, plaintiff filed an application on January 5, 1979, for disability insurance benefits, alleging that rheumatoid arthritis of the lower spine with pain extending to the toes had disabled him since June 28, 1969. Plaintiff's application was denied initially and on re-

consideration by the Social Security Administration ("SSA").

Because he was no longer employable, plaintiff filed a second application on November 13, 1980, pursuant to the United States International Social Security Agreement between the United States and the Federal Republic of Germany. This application was also denied initially and on reconsideration by the SSA.

On November 24, 1980, plaintiff filed a third application, this time alleging that he became disabled on July 16, 1978, due to degenerative disc disease of the entire spine, nerve root irritation extending into his feet and persistent pain in the lumbosacral area. Again, the SSA denied plaintiff's application. On appeal an Administrative Law Judge ("ALJ") considered plaintiff's claim *de novo* and determined in a decision dated May 8, 1984, that plaintiff met the disability insured status requirements from July 11, 1978, to September 30, 1983, but that he had the ability to perform his previous work as a cashier and, therefore, was not "disabled" within the meaning of the Act. The Appeals Council denied plaintiff's request for review and the decision became final on November 7, 1984.

Plaintiff then filed this action. On January 6, 1986, the Court remanded the case to the Appeals Council, which issued a second decision on June 23, 1986, effectively affirming the May 8, 1984, decision. The Appeals Council found that plaintiff('s) (1) met the special earnings requirements for purposes of disability benefits through September 30, 1984, (2) suffers from a severe impairment caused by degenerative arthritis of the lumbar spine restricting him to "light work," (3) impairment does not meet or equal an impairment listed in Appendix 1 of 20 C.F.R. Part 404, (4) is capable of performing his last known occupation as a cashier, and (5) is not disabled based on the medical-vocational guidelines of Appendix 2 of 20 C.F.R. Part 404. The parties have moved the Court to affirm or reverse the decision of the Appeals Council.

## II. THE SECRETARY'S DECISION IS NOT SUPPORTED BY SUBSTANTIAL EVIDENCE

### A. *The Scope of Review*

Judicial review of the Secretary's decision is limited to a determination of whether the decision is supported by substantial evidence, *see* 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971); *Vance v. Heckler*, 757 F.2d 1324, 1326 (D.C. Cir. 1985),—"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401, 91 S.Ct. at 1427 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938)); *Department of Transportation v. ICC*, 733 F.2d 105, 110 (D.C. Cir.1984). The ALJ must weigh all the evidence and may not disregard evidence that suggests an opposite conclusion. *See Whitney v. Schweiker*, 695 F.2d 784, 788 (7th Cir.1982); *Diabo v. Secretary of HEW*, 627 F.2d 278, 281–82 (D.C. Cir.1980).

### B. *Plaintiff Has Proven That He Is No Longer Capable of Performing His Previous Work*

The burden of proof in a Title II denial of insurance benefits case is split. Once plaintiff proves a disability that prevents him from performing his previous work, the burden shifts to the Secretary to prove that based on plaintiff's age, education, work experience and residual capacity, he can engage in some other kind of substantial gainful employment. *See e.g., Goodson v. Railroad Retirement Board*, 595 F.2d 881, 883 (D.C. Cir.1979); *Meneses v. Secretary of HEW*, 442 F.2d 803, 806 (D.C. Cir.1971); *Fulwood v. Heckler*, 594 F.Supp. 540, 543 (D.D.C.1984). In this case, the Appeals Council found that plaintiff did not meet his burden of proof because he "is capable of performing his last know [sic] occupation as a cashier." Report to the Court and Notice of Filing (filed June 23, 1986). The Court holds, however, that the Appeals Council's finding is not supported by substantial evidence. To the contrary,

there is not substantial evidence to support any conclusion but that plaintiff's disability prevents him from performing his previous jobs as a cashier, a grocery packer and a factory worker.

### 1. Plaintiff's Work as a Cashier Does Not Constitute "Previous Work" Because More Than Fifteen Years Had Passed

■ The agency's regulations expressly exclude from the definition of "previous work" any work performed more than 15 years ago. *See* 20 C.F.R. § 404.1565(a); Social Security Ruling 82–62 (Oct. 1982). "The 15–year guide is intended to insure that remote work experience is not currently applied." 20 C.F.R. § 404.1565(a). Plaintiff worked as a cashier at the N.C.O. Club Lenggries Kaserne in Germany from November, 1966, to December, 1968. The Appeals Council decision was issued on June 23, 1986, more than 15 years since plaintiff was last employed as a cashier. Therefore, it was improper for the Appeals Council to consider plaintiff's work as a cashier as "previous work."

### 2. Plaintiff Met His Burden of Proof Because He Was Unable to Perform His Most Recent Job

■ Plaintiff may meet his burden of proving that he cannot perform his past relevant work by showing that he is unable to perform his most recent job. *See Carter v. Heckler*, 712 F.2d 137, 141 (5th Cir. 1983). Plaintiff was unable to continue working as of July, 1978. R. 27, 198, 294. Both Dr. Nenadovic and Dr. Barkman concluded at that time that plaintiff could not continue doing light factory work. R. 79, 81. Subsequently, in April, 1980, Drs. Nadler and Benke and the German social security authority also concluded that plaintiff was incapable of gainful employment. R. 139. Plaintiff was not able to continue doing light factory work, R. 27, 182, 188 & 198, and, therefore, proved that he was not capable of performing his previous work.

### 3. The Evidence in the Entire Record Establishes That Plaintiff Is Unable to Perform Any of His Previous Jobs

■ The Appeals Council must consider the record as a whole, including evidence favorable to plaintiff. *See McCruter v. Bowen*, 791 F.2d 1544, 1548 (11th Cir.1986); *Taylor v. Heckler*, 595 F.Supp. 489, 492 (D.D.C.1984). The Appeals Council, however, focused upon one aspect of the record and disregarded contrary evidence, "attach[ing] too much weight to the supposed 'exaggeration' by [plaintiff] of [his] pain. Such a personal idiosyncrasy should not be permitted to detract from the objectively established medical facts which demonstrate [his] inability to work … on a regular and continuing basis…." *McCruter*, 791 F.2d at 1548. As discussed below, the overwhelming weight of the evidence submitted by the doctors who have examined and treated plaintiff since 1969 is that plaintiff is incapable of performing *any* of his previous jobs.

In 1969, Major Payton S. Adams, Jr. found "hypertrophic spurring at most levels in [plaintiff's] lumbar segments" and concluded that plaintiff was suffering from early degenerative disc disease. R. 75.

Dr. Vera Nenadovic was plaintiff's principal treating physician from 1969 to at least 1979. She reported that since 1969 plaintiff had been suffering from degenerative disc disease and advanced arthritis of the spine extending down the left leg to the toes, and that from 1969 to 1973 he was 75% disabled. R. 73–81. Based on range-of-motion tests and Dr. Nenadovic's continuing observation of plaintiff, she concluded in 1979 that plaintiff was 100% disabled. R. 81.

On April 12, 1979, Dr. Barkman concluded from an examination of plaintiff that he had "moderately severe degeneration" of his disc spaces, narrowing of the joint spaces and facet spurring, but no sensory or trophic changes and no apparent motor function deficits. Dr. Barkman also found that plaintiff was unable to carry more than 15–20 pounds. It was Dr. Barkman's

opinion that plaintiff was totally disabled. R. 79.

Dr. Eduard Nadler examined plaintiff on June 19, 1979. From this examination Dr. Nadler determined that plaintiff suffered from "functional deficits and degenerative radiologic changes in the thoracic and lumbar segments that are very considerable...." Dr. Nadler also found that the stability of plaintiff's vertebral column was "markedly disturbed, and that the capacity of the axial organ to take stress is correspondingly reduced." He noted that although there were no sensory or motor disorders in the lower extremities, deformities "reduced [the] capacity of the lower extremities for taking stress...." Dr. Nadler concluded that plaintiff could perform only "easy jobs, primarily while sitting ... with occassional walking and standing," but could not handle jobs involving walking, standing, climbing stairs, lifting and carrying loads, or working in a bent position. R. 294–302.

An examination by Dr. Benke occurred on March 2, 1980. Dr. Benke found that plaintiff could walk unaided, but that the capacity of his vertebral column to withstand stress was impaired for easy jobs as well as jobs entailing physical exertion. It was Dr. Benke's opinion that plaintiff could perform easy jobs involving some walking or standing, but primarily sitting, for no more than three to four hours. R. 323–355.

Dr. A.S. Barnett examined plaintiff on March 3, 1983. Dr. Barnett found that plaintiff's spine and knees showed advanced degenerative changes, some of which would be found in healthy men of 55 years of age. Dr. Barnett concluded that plaintiff could perform "sedentary employment without problems." R. 82–83.

Finally, on May 2, 1986, Dr. Manfred Jucho reported that since June 20, 1972, he saw plaintiff every three to four weeks. Based on these regular check-ups, Dr. Jucho noted during his last examination of plaintiff, which was on May 2, 1986, that plaintiff's condition had constantly deteriorated despite continuous treatment. R. 376.

Every doctor that examined plaintiff found that he suffered from degenerative disc disease, among other ailments. Drs. Nenadovic, Barkman, Nadler and Benke each conducted range of motion tests. R. 79, 81, 297–99, 326–29. The doctors agreed that plaintiff's ability to work was limited. Dr. Barkman reported that plaintiff could carry no more than 15 to 20 pounds and was totally disabled. Dr. Nadler concluded that plaintiff was only capable of performing easy jobs while sitting, with occassional walking or standing. Dr. Benke concluded that plaintiff could endure no more than three to four hours of work and 15 to 20 minutes of walking. Dr. Barnett opined that plaintiff was limited to sedentary employment. Dr. Nenadovic reported that range-of-motion tests indicated that plaintiff was 75% disabled from 1969 to 1973 and 100% disabled by 1979. The Court finds that the overwhelming weight of the evidence shows that plaintiff is severely impaired. *See* Report to the Court and Notice of Filing (filed June 23, 1986).

The Appeals Council heavily relied on Dr. Barnett, whom plaintiff testified examined him for only fifteen minutes, and Dr. Nadler. *See* Defendant's Motion for Judgment of Affirmance at 12. However, limited weight should be given to the report of a consulting physician who only briefly examines plaintiff on a single occasion. *See, e.g., Ward v. Heckler,* 786 F.2d 844, 846 (8th Cir.1986); *Narrol v. Heckler,* 727 F.2d 1303, 1306 (D.C. Cir.1984); *Hancock v. Secretary of HEW,* 603 F.2d 739, 740 (8th Cir.1979); *Fulwood,* 594 F.Supp. at 544. During the 15 minutes that Dr. Barnett examined plaintiff, R. 39–40, he did not perform the accepted joint-motion tests despite a request that he do so. R. 204. Dr. Barnett also neglected to complete a function assessment sheet as requested. R. 207. Therefore, it was improper to give Dr. Barnett's report so much weight.

In contrast, the reports of plaintiff's treating physicians are entitled to substantial weight and cannot simply be disregarded in deference to a report of a consulting physician under contract to the Secretary.

*See Ward,* 786 F.2d at 846; *Narrol,* 727 F.2d at 1306; *Hancock,* 603 F.2d at 740; *Fulwood,* 594 F.Supp. at 544. It was improper for the Appeals Council to entirely discredit Dr. Nenadovic and Dr. Jucho; both doctors saw plaintiff on a regular basis for at least 10 years. *See Stephens v. Heckler,* 766 F.2d 284, 288 (7th Cir.1985) ("When experience backed by observation is set against the 'speculative statement' ... of a consulting physician, substantial evidence lies on the side of the treating physician.") (citation omitted); *Smith v. Schweiker,* 728 F.2d 1158, 1163–64 (8th Cir. 1984); *Perez v. Schweiker,* 653 F.2d 997, 1001 (5th Cir.1981); *Gold v. Secretary of HEW,* 463 F.2d 38, 42 (2d Cir.1972); *Fulwood,* 594 F.Supp. at 544 ("The ALJ is required to give greatest weight to evidence of a personal, treating physician, particularly when the consultation has been over a considerable length of time, unless this is *clearly* outweighed by conflicting evidence of other qualified physicians.") (emphasis added).

Although this Court may not substitute its judgment for the Secretary's, the Court may interfere with the Secretary's conclusion where, as here, the great weight of the evidence contradicts the finding of the Secretary. *See Taylor v. Heckler,* 595 F.Supp. 489, 491 (D.D.C.1984). A reasonable mind could not accept any of this evidence as adequate to support the Appeals Council's finding that plaintiff is capable of working as a cashier, a job that requires standing for long periods of time, a grocery packer and carrier, which also involves long periods of standing, moderate walking and heavy lifting, or a factory worker, which even if done while sitting, plaintiff would be limited to three to four hours a day. *See Rousey v. Heckler,* 771 F.2d 1065, 1070–71 (7th Cir.1985) (In order to be capable of engaging in substantial gainful employment, a person must be capable of working a full day, on a sustained, day in and day out basis.); *Johnson v. Harris,* 612 F.2d 993, 998 (5th Cir.1980) (same). Considering all the evidence, there is no basis for concluding that plaintiff can perform any of these jobs for a full day on a regular and continuing basis. Therefore, there is not substantial evidence on the entire record that plaintiff is capable of performing his previous employment. To the contrary, a reasonable mind could only accept the evidence as adequate to support a finding that plaintiff is not capable of performing his previous employment as a grocery bagger, light factory worker or cashier.

C. *The Secretary Has Not Proven That Plaintiff Is Not Disabled and Has the Capacity to Engage in Substantial Gainful Employment*

Once plaintiff has proven that he is unable to perform his previous work, defendant must show that considering the plaintiff's age, education and experience, he is capable of engaging in some other gainful employment. *See Goodson,* 595 F.2d at 883; *Meneses,* 442 F.2d at 806; *Fulwood,* 594 F.Supp. at 543. In cases where the plaintiff suffers solely from exertional impairments that limit his ability to perform certain levels of work, the Secretary may rely on the medical-vocational guidelines ("the Grids") to determine disability. *See Smith v. Schweiker,* 719 F.2d 723, 725 (4th Cir.1984). In this case, the Secretary applied the Grids predicated on findings that plaintiff is capable of doing "light work" and that his pertinent age is 52. The Court holds that the Secretary did not apply the Grids properly and that proper application of the Grids results in a finding that plaintiff is disabled.

The Secretary's finding that plaintiff is capable of performing "light work" is not supported by substantial evidence. To perform "light work," plaintiff must be capable of lifting at least 20 pounds and carrying 10 pounds. *See* 20 C.F.R. § 404.1567(b). Plaintiff must also be able to frequently lift and carry, stand and walk, and push and pull arm and leg controls while sitting. *See* 20 C.F.R. § 404.1567(b). Plaintiff must be able to do this for six hours each eight hour work day. *See* Social Security Ruling 83–10 (Jan. 1983). Dr. Barkman found that plaintiff could not lift

more than 15 to 20 pounds. Dr. Benke reported that plaintiff could not stand or walk for more than 15 to 20 minutes or work for more than three to four hours; far less than the six hours necessary to do "light work." In fact, the ALJ found that plaintiff only had the capacity to perform "sedentary work," R. 11, yet the Appeals Council modified that finding without explanation. R. 99. Based on the entire record, the Court finds that plaintiff could do, at most, "sedentary work," and, thus, the application of the Grids results in a finding of disabled. *See* Rule 201.12, 20 C.F.R. Part 404, App. 2.

 The plaintiff's pertinent age to be used when applying the Grids is his age on the date he last met the insured status or the adjuducation date, whichever is *earlier*. *See* Social Security Ruling 83–10 (Jan. 1983). Defendant considered plaintiff a person "approaching advanced age" because he was 52 when he applied for disability insurance benefits. Plaintiff was 56, however, on the last date of his insured status, which was prior to the adjudication date. Therefore, plaintiff should have been treated as person of "advanced age," resulting in a finding of disabled under either the sedentary or light work Grids. *See* Rules 201.04, 202.04, 20 C.F.R. Part 404, App. 2.

### III. CONCLUSION

For the foregoing reasons, the Court finds upon review of the entire record that there is not substantial evidence that plaintiff is capable of performing his previous work. The Court further finds that proper application of the Grids results in a finding of disabled. Therefore, upon review of the pleadings and transcript of the record, the Court hereby reverses the decision of the Secretary. An Order shall issue herewith.

### ORDER

For the reasons set forth in the Court's Opinion of even date herewith, and upon review of the pleadings and the transcript of the record, it is, this 30th day of October, 1986,

ORDERED that the decision of the Secretary in the above entitled matter is reversed; and, it is

FURTHER ORDERED that plaintiff be provided the appropriate disability period and appropriate disability insurance benefits pursuant to Title II of the Social Security Act, 42 U.S.C. § 401 *et seq.;* and, it is

FURTHER ORDERED that this case shall stand dismissed with the right of either party to re-open upon application to the Court for such other and further relief as may be appropriate in the premises.