**Richard J. FERRARO, Appellant,**

**v.**

**Edward J. DERWINSKI, Secretary of Veterans Affairs, Appellee.**

**No. 90–444.**

United States Court of Veterans Appeals.

Submitted Feb. 15, 1991.

Decided June 24, 1991.

Rick Surratt (non-attorney practitioner), was on the brief, for appellant.

Raoul L. Carroll, Gen. Counsel, Barry M. Tapp, Asst. Gen. Counsel, Pamela L. Wood, Deputy Asst. Gen. Counsel, and Jacqueline E. Monroe, were on the brief, Washington, D.C., for appellee.

Before MANKIN, HOLDAWAY, and IVERS, Associate Judges.

IVERS, Associate Judge:

Appellant, Richard J. Ferraro, appeals from a February 8, 1990, Board of Veterans' Appeals (BVA or Board) decision which concluded that a rating in excess of 50–percent for psychiatric disorder and a rating in excess of 40–percent for residuals of a low back injury were not warranted. The Board also held that appellant was not unemployable by reason of his service-connected disabilities and therefore was not entitled to a total disability rating, for compensation purposes, based upon unemployability. We remand the case to the BVA for reconsideration of all relevant evidence, issues, and regulations in a manner consistent with this opinion.

Appellant served in the United States Armed Forces, from April 2, 1942, to August 16, 1946. On May 31, 1984, the Veterans' Administration (now the Department of Veterans Affairs) (VA) granted appellant a 50–percent disability rating for a generalized anxiety disorder, a 40–percent disability rating for residuals of an intervertebral disk syndrome, and a zero-percent disability rating for pruritus and residuals of a right hernia repair. Appellant has a combined disability evaluation of 70–percent. R. at 6. This disability rating has remained in effect since 1984. On February 10, 1986, appellant filed a claim for an increase in his disability ratings, stating that he could no longer work as a senior investigator for Passaic County, New Jersey. R. at 1. He worked for Passaic County from April 3, 1975, to February 8, 1980, and from June 30, 1980, to February 21, 1986. R. at 3. Appellant's appointment as senior investigator was not renewed and he retired on April 1, 1986. Appellant's claim for an increase in disability ratings was denied by a VA rating decision on September 29, 1986. Appellant appealed this decision to the BVA. On July 18, 1988, the BVA upheld the denial. R. at 12–13.

On July 21, 1988, appellant requested that VA reopen his claim for an increase in disability ratings for psychiatric and lower back disorders along with a total rating of 100–percent disabled based on individual unemployability by reason of his service-connected disabilities. On the VA form entitled Report of Medical Examination for Disability Evaluation, appellant wrote, under the section for Occupational History Since Last VA Examination, "[I w]as forced out of my last 6 jobs because of my irritability due to my nervous condition." R. at 19. He went on to state under the Medical History section, "[I h]ave lost my ability to concentrate on my job or attending to personal affairs." *Id.* During September and October 1988, appellant received psychological, orthopedic and clinical examinations by VA. A rating decision on December 15, 1988, held that the evidence received did not warrant any change in appellant's disability ratings. Appellant filed a Notice of Disagreement on February 3, 1989, in response to the December 1988 rating decision. On February 8, 1990, the BVA upheld the denial for increase in appellant's disability ratings and refused to grant individual unemployability. Appellant made a timely appeal to this Court.

The Court has jurisdiction to hear this appeal pursuant to 38 U.S.C. § 4052 (1988).

## I. INCREASE OF SERVICE–CONNECTED DISABILITIES

### A. Increase for Psychiatric Disorder

■ Generalized anxiety disorder is to be rated under 38 C.F.R. § 4.132, Diagnostic Code 9400 (1990) which provides for the following categories of disability:

100 percent:

The attitudes of all contacts except the most intimate are so adversely affected as to result in virtual isolation in the community. Totally incapacitating psychoneurotic, symptoms bordering on gross repudiation of reality with disturbed thought or behavioral processes associated with almost all daily activities such as fantasy, confusion, panic and explosions of aggressive energy resulting in profound retreat from mature behavior. Demonstrably unable to obtain or retain employment.

70 percent:

Ability to establish and maintain effective or favorable relationships with people is severely impaired. *The psychoneurotic symptoms are of such severity and persistence that there is severe impairment in the ability to obtain or retain employment.*

50 percent:

Ability to establish or maintain effective or favorable relationships with people is considerably impaired. By reason of psychoneurotic symptoms the reliability, flexibility and efficiency levels are so reduced as to result in considerable industrial impairment.

38 C.F.R. § 4.132 (emphasis added).

In its decision not to increase appellant's rating, the BVA, in the Discussion and Evaluation portion of the opinion, seems to place great weight on the fact that "although he takes psychotropic medication, he has not been hospitalized for psychiatric purposes in the recent past." *Richard J. Ferraro*, loc. no. 005163, at 5 (BVA Feb. 8, 1990). Hospitalization does not appear as a criterion in determining the severity of a disability under 38 C.F.R. § 4.130 (1990), which explains:

*The severity of disability is based upon actual symptomatology, as it affects social and industrial adaptability. Two of the most important determinants of disability are time lost from gainful work and decrease in work efficiency. The rating board must not underevaluate the emotionally sick veteran with a good work record, nor must it overevaluate his or her condition on the basis of a poor work record not supported by the psychiatric disability picture. It is for this reason that great emphasis is placed upon the full report of the examiner, descriptive of actual symptomatology.* The record of the history and complaints is only preliminary to the examination. *The objective findings and the examiner's analysis of the symptomatology are the essentials. The examiner's classification of the disease as*

*"mild," "moderate," or "severe" is not determinative of the degree of disability, but the report and the analysis of the symptomatology and the full consideration of the whole history by the rating agency will be.... Ratings are to be assigned which represent the impairment of social and industrial adaptability based on all of the evidence of record.* (See § 4.16 regarding the issue of individual unemployability based on mental disorder.) *Evidence of material improvement in psychotic disorders disclosed by field examination or social survey should be utilized in determinations of competency, but the fact will be borne in mind that a person who has regained competency may still be unemployable, depending upon the level of his or her disability as shown by recent examinations and other evidence of record.*

(Emphasis added). According to the above-cited regulation, the VA rating board is required to take the entire record into consideration. However, there is only one psychiatric examination found in the record and that was performed by a VA doctor in September 1988. His diagnosis was "[a]nxiety & [d]epressive [d]isorder (with) [p]aranoid [f]eatures." R. at 22. There was no evidence that the examining doctor had access to any of appellant's prior medical records and the doctor made no finding as to whether appellant's condition had gotten worse, stayed the same, or improved. Although the doctor did not give an opinion whether appellant was employable, he did state "memory and cognition [were] intact, [i]nsight [was] poor—judgment [was] compromised under stress." R. at 21. This suggests that working under stressful situations could cause problems for appellant. The December 15, 1988, rating decision, after stating the above evidence, merely stated "symptoms discredited." R. at 27. The rating board provided no reasons or bases for that determination and the BVA, likewise, did not adequately explain why appellant was not entitled to a higher rating.

### B. Increase for Residuals of an Intervertebral Disk Syndrome

On his Report of Medical Examination for Disability Evaluation, appellant wrote:

My back condition is continuosly [sic] in spasm so that I cannot sit, stand or walk without severe pain and loss of motion. The pain radiates down the left leg. Use feldene and soma compound regulary [sic] with no relief of pain. Wear corset and use bed board and special mattress. I lose sleep and am continuously fatigued and irritable. I am unable to do any type of physical activity. I have trouble sitting in one position and have trouble driving. I am unable to sit still in church.

R. at 19. The orthopedic examination of appellant was done without reference to the veteran's claim file or his medical service records. R. at 23. The X-ray report showed degenerative changes at the L4, L5 and S1 vertebrae. R. at 24. The VA doctor diagnosed appellant as having "discogenic disease lumbar spine (L4–L5 & L5–S1)." R. at 23. Discogenic means "caused by derangement of an intervertebral disk." Dorland's Illustrated Medical Dictionary 480 (27th ed. 1988).

Intervertebral (disk) syndrome is to be rated under 38 C.F.R. § 4.71a, Diagnostic Code 5293 (1990) (DC 5293), which provides for the following categories of disability:

60 percent:

Pronounced; with *persistent symptoms* compatible with sciatic neuropathy with *characteristic pain* and demonstrable *muscle spasm*, absent ankle jerk, or other neurological findings appropriate to site of diseased (disk), *little intermittent relief.*

40 percent:

Severe; recurring attacks, with intermittent relief.

(Emphasis added).

Neuropathy is defined as "a general term denoting functional disturbances and/or pathological changes in the peripheral nervous system." Dorland's at 1131. "Sciatic" refers to the sciatic nerve; sciatica is used to refer to "a syndrome charac-

terized by pain radiating from the back into the buttock and into the lower extremity along its posterior or lateral aspect, and most commonly caused by prolapse of the intervertebral disk; the term is also used to refer to pain anywhere along the course of the sciatic nerve." *Id.* at 1494. There is no mention of appellant having an absence of an ankle jerk. However, there is evidence in the record of much of the symptomatology required to be rated at 60–percent. Dr. Alfred J. Krug, the examining VA doctor for appellant's September 26, 1988, orthopedic examination stated:

> [Appellant] cannot walk on toes or heels or accomplish a deep knee bend because of *"marked low back pain"*. He stands erect with a slight increase in the lumbar lordotic curvature of the spine but no evidence of a scoliosis. The range of motion of his trunk is as follows: Flexion is 25 degrees, extension is 0 degrees, lateral bends to both right and left are 10 degrees each. Pain is produced on percussion over the spinous and lateral processes of the lumbar spine, and *there is noted marked spasm of the lumbar paravertebral musculature.* Sciatic notch tenderness is not elicited. There is, however, *left extensor hallucis longus weakness elicited.* Straight leg raising is positive on the left at 40 degrees, and a contralateral sign is positive at 65 degrees. Corresponding lower limb lengths and girths to corresponding levels of thigh and calf are equal. The neurological examination reveals the deep tendon reflexes to be present. The left knee jerk is diminished compared to the right. Sensation to pin prick and touch is diminished on the lateral aspect of the left thigh and leg. There were no abnormal reflexes elicited. X-rays of the LS spine are ordered.

R. at 23 (emphasis added). The December 15, 1988, rating decision did not specifically comment on Dr. Krug's medical report except to list some of the doctor's findings. In fact, it appears that the Board based its entire decision on the series of VA examinations conducted during September and October 1988. Dr. Krug listed under the Complaints section of his examination "[t]he veteran's C file and medical service records are not available." R. at 23. The Board addressed the issue as follows:

> [T]he veteran claims that he is entitled to an increased evaluation for his low back disorder. We have carefully reviewed the recent medical evidence in relation to the rating criteria reported above. However, we do not find in the reported clinical or X-ray observations pathologic changes of the nature and severity contemplated by the pertinent criteria for a higher evaluation. He retains some motion of the back, sciatic notch tenderness is not elicited, and neurologic abnormalities are not shown to be incapacitating. It is our opinion the overall level of impairment is compatible with no more than a 40 percent rating.

*Ferraro,* loc. no. 005163, at 5. The Board did not address the information provided by appellant in his Report of Medical Examination for Disability Evaluation. Appellant stated that he was in constant pain and unable to do any physical activity. According to the examination, appellant was suffering from muscle spasms. Appellant's pain was not adequately addressed by the Board. Under 38 C.F.R. § 4.40 (1990), the VA has a duty to determine functional loss which includes evaluating a veteran's pain. The Board failed to apply this regulation which this Court deems necessary to determining a disability rating for a disability involving the musculoskeletal system. *See Hatlestad v. Derwinski,* 1 Vet.App. 164, 167 (1991).

Under *Colvin v. Derwinski,* 1 Vet.App. 171, 175 (1991), the "BVA panels must consider only independent medical evidence to support their findings rather than provide their own medical judgment in the guise of a Board opinion." As this Court stated in *Colvin,* at 175:

> If the medical evidence of record is insufficient, or in the opinion of the BVA, of doubtful weight or credibility, the BVA is always free to supplement the record by seeking an advisory opinion, ordering a medical examination or citing recog-

nized medical treatises in its decisions that clearly support its ultimate conclusions. *See* 38 U.S.C. § 4009 (1988); *Murphy v. Derwinski,* [1 Vet.App. 78, 81] (1990). This procedure ensures that all medical evidence contrary to the veteran's claim will be made known to him and be part of the record before this Court.

The BVA is required by 38 U.S.C. § 4004(d)(1) (1988) to include in its decisions "a written statement of [its] findings and conclusions, and the reasons or bases for those findings and conclusions...." *See Gilbert v. Derwinski,* 1 Vet.App. 49, 55–57 (1990); *Sammarco v. Derwinski,* 1 Vet. App. 111, 112–114 (1991). The BVA decision here failed to adequately explain why the Board determined that appellant's back and mental conditions had not gotten worse.

If appellant is granted 70–percent disability for his generalized anxiety disorder, that fact, in and of itself, should result in consideration for a 100–percent evaluation based on unemployability, if the veteran's condition renders him unemployable. *See* 38 C.F.R. § 4.16(c) (1990) (effective March 1, 1989). "[W]here the law or regulation changes after a claim has been filed or reopened but before the administrative or judicial appeal process has been concluded, the version most favorable to appellant ... will apply unless Congress provided otherwise or permitted the Secretary of Veterans Affairs (Secretary) to do otherwise and the Secretary did so." *Karnas v. Derwinski,* 1 Vet.App. 308, 313 (1991).

## II. UNEMPLOYABILITY

Appellant has offered evidence showing that he is unable to work at his previous job and, by his account, has been unable to hold at least six new jobs. He has a psychiatric condition that makes him irritable, and therefore, unable to work with the people around him. Appellant also has a back condition which he claims prevents him from performing any physical activity. The BVA, in its denial of benefits, did not take into consideration the combination of appellant's psychiatric and back disabilities

when it made its decision. The Board commented only on his psychiatric condition and then only in vague terms. The Board stated:

> The veteran, in addition, is not shown to be unemployable, in fact, by reason of his service-connected disorders. *We do not dispute that working at a position involving contact with the public is the type of the [sic] job the veteran should not have.* However, inability to perform a certain job is not determinative as to the entitlement to a total compensation rating based on unemployability. Rather, it must be shown that the veteran is precluded from all types of work, and that the impairment arises solely from service-connected disability. As discussed above, it is our opinion that his service connected disorders are not shown to produce enough disability to keep the veteran from engaging in some form of substantially gainful employment.

*Ferraro,* loc. no. 005163, at 6 (emphasis added).

The Board did not offer any reasons or bases for its finding that appellant's disabilities did not prevent him from working. The only explanation in the Board's decision is that "it is our opinion that his service-connected disorders are not shown to produce enough disability to keep the veteran from engaging in some form of substantially gainful employment." *Id.* Section 4004(d) of title 38 U.S.C. (1988) states in part that in the written statement of the Board's findings and conclusions, the Board must list "the reasons or bases for those findings and conclusions, on all material issues of fact and law presented on the record." This includes explaining why the evidence presented by appellant showing that he cannot work was discounted. The BVA has offered no independent opinions, nor has it pointed to anything in the record that supports its view. The Board has merely offered its own opinion, a technique this Court has previously determined to be

inadequate. *See Murphy*, 1 Vet.App. at 81; *Colvin*, 1 Vet.App. at 174–75.

Neither the U.S.Code nor the Code of Federal Regulations offers a definition for "substantially gainful employment" or "substantially gainful occupation." The VA Adjudication Manual M21–1 (M21–1) § 50.55(8) defines "substantially gainful employment" as "that which is ordinarily followed by the nondisabled to earn their livelihood with earnings common to the particular occupation in the community where the veteran resides." This suggests a living wage. The standard appears to be an objective one but offers little insight as to how it is to be applied. The Board cites 38 C.F.R. §§ 3.340, 3.341, and 4.16 (1990) in support of its decision. The Court, in finding these regulations applicable, also finds that 38 C.F.R. §§ 4.18 and 4.19 (1990) are applicable in this scheme but, as this Court determined in *Hatlestad*, 1 Vet.App. at 167, those regulations are confusing. As in *Hatlestad*, the Court, here, points out the need for the BVA to clearly and concisely discuss the interrelationship between the above-mentioned regulations and their applicability to appellant's claim. *See also Hyder v. Derwinski*, 1 Vet.App. 221, 223–224 (1991) (confusion also exists with the regulations involving claims for non-service-connected pensions).

To find a definition for "substantially gainful employment," the Court is called upon to look elsewhere. Appellant has cited *Kerner v. Flemming*, 283 F.2d 916 (2d Cir.1960). In that case, the Second Circuit reviewed a decision of the Secretary of Health, Education and Welfare, (now Health and Human Services) (HHS Secretary), which denied a claimant's application for disability insurance benefits and the establishment of a period of disability. The Second Circuit held that "substantial and gainful activity" was determined by what an applicant could do and what employment opportunities were there for a person who could do what the applicant could do. *Kerner*, 283 F.2d at 921. The Second Circuit found insufficient evidence in the record to answer either issue; therefore, the Second Circuit went on to state

that once the claimant had shown an inability to resume his former work, and the record did not otherwise contain any evidence of claimant's ability to engage in substantial gainful work, the HHS Secretary (even though the claimant has the ultimate burden of persuasion) was required to introduce evidence showing that the claimant was employable. The reviewing court was not "bound to sustain a denial of disability benefits where the applicant has raised a serious question and the evidence affords no sufficient basis for the HHS Secretary's negative answer." *Id.* at 922. The claim was remanded to the HHS Secretary to gather more information.

*Meneses v. Secretary of Health, Education and Welfare*, 442 F.2d 803, 806–807 (D.C.Cir.1971), also dealt with the denial of disability benefits. The HHS Secretary did not have to show that the claimant would actually be hired, but that there were jobs in the national economy that the claimant could pursue based on the claimant's background and condition, including age, education, work experience and residual capacity. *See also Mastroni v. Bowen*, 646 F.Supp. 1032 (D.D.C.1986) (District Court reversed a HHS Secretary decision denying plaintiff's claim for disability insurance benefits under Title II of the Social Security Act because the HHS Secretary's decision was not supported by substantial evidence after the plaintiff had offered substantial evidence that he could no longer work at his old employment.)

This Court is aware that, under the current VA regulations governing determinations of unemployability for VA compensation purposes, age is not a factor. *See* 38 C.F.R. § 3.341(a) (1990). However, the remaining factors mentioned in these opinions such as "employment history, educational and vocational attainment and all other factors having a bearing on the issue," 38 C.F.R. 4.16(b) (1990), are relevant to determinations of unemployability for VA compensation purposes.

"All types of work" as used in the BVA decision in this case is not an appropriate standard by which to determine employability. Many disabled people are able to do

some form of "work" but it is not the type of work, or amount of work, by which one can provide subsistence for himself or his family. "Substantially gainful employment" is a term of art which is utilized frequently in rating and employability determinations, but which has no concrete definition. Our disposition of this case does not require that we adopt a definition of "substantially gainful employment." Therefore we leave the development of such a definition to the Secretary and urge that he establish a clear definition for this term. This would be helpful, not only as an aid to veterans, but also as an aid to VA decision-makers and to this Court in future decisions.

The Court notes that the VA has recently published a definition of "marginal employment" in consideration of total disability evaluations based on individual unemployability. *See* 55 Fed.Reg. 31,579 (Aug. 3, 1990) (codified at 38 C.F.R. § 4.16(a) effective Sep. 4, 1990). The regulation defines "marginal employment" as being a "veteran's earned annual income [that] does not exceed the amount established by the U.S. Department of Commerce, Bureau of the Census, as the poverty threshold for one person." *Id.* at 31,580. The regulation declares that if a veteran has only "marginal employment," it is not considered "substantially gainful employment." However, no proffer is made with respect to defining "substantially gainful employment." For our purposes here, a definition of what "substantially gainful employment" is not, constitutes only a first step toward a clear definition.

As this Court articulated in *Gilbert*, 1 Vet.App. at 57:

> In view of the mandate of § 4004(d)(1) that the BVA articulate with reasonable clarity its "reasons or bases" for decisions, and in order to facilitate effective judicial review, the Board must identify those findings it deems crucial to its decision and account for the evidence which it finds to be persuasive or unpersuasive. These decisions must contain clear analysis and succinct but complete explana-

tions. A bare conclusory statement, without both supporting analysis and explanation, is neither helpful to the veteran, nor "clear enough to permit effective judicial review," nor in compliance with statutory requirements.

## III. PENSION

■ If VA determines that appellant does not qualify for total unemployability for compensation purposes, VA should evaluate appellant under Chapter 15 to determine whether or not he qualifies for pension based on non-service-connected disability. Section 3.151(a) of title 38 C.F.R. (1990) states:

> *General.* A specific claim in the form prescribed by the Secretary must be filed in order for benefits to be paid to any individual under the laws administered by VA. (38 U.S.C. 3001(a)). A claim by a veteran for compensation *may be considered to be a claim for pension;* and a claim by a veteran for pension may be considered to be a claim for compensation. *The greater benefit will be awarded, unless the claimant specifically elects the lesser benefit.*

(Emphasis added). Neither the VA Regional Office nor the BVA addressed the issue of appellant's qualification for a non-service-connected pension. Appellant was sixty-nine years old at his last VA examination. R. at 21. According to the law then applicable, "a person shall be considered to be permanently and totally disabled if such person is sixty-five years of age or older...." 38 U.S.C. § 502(a) (1988) (this provision has been amended to remove age as a consideration, however, the new law provides that the former provision still applies to all claims filed before November 1, 1990. Omnibus Budget Reconciliation Act of 1990, Pub.L. No. 101–508, Title VIII, § 8002(b), 104 Stat. 1388 (1990) (codified as 38 U.S.C.A. § 502 note (1990), [applicability]). VA has a duty under 38 U.S.C. § 241(2) (1988) to ensure that each veteran is informed of all benefits to which he is entitled. *See Akles v. Derwinski*, 1 Vet. App. 118, 121 (1991).

## IV. DUTY TO ASSIST

In *Littke v. Derwinski*, 1 Vet.App. 90, 92–93 (1990), this Court determined that the Secretary had breached his statutory duty, pursuant to 38 U.S.C. § 3007(a) (1988), to assist the claimant in gathering information. Here, appellant, through his representative, in his July 21, 1988, letter asking the VA to reopen his claim, put VA on notice that he was receiving continuous treatment at the VA outpatient clinic in Newark, New Jersey. R. at 15. The VA had a duty to obtain the records of this treatment and include them in the claim file prior to making its determination. During appellant's VA examination, he told the examining doctor that he was seeing a "Dr. Palma ... once [every] 2 mo[nth]s." R. at 22. These records should also have been obtained. Appellant also listed having worked at six jobs. It is not clear from the record, but if he worked at six jobs in two years after his senior investigator position, and, if he was unable to remain employed, that information could constitute evidence of unemployability.

Paragraphs 4.03a and 22.03 of M21–1 specifically deal with VA's duty to assist as elaborated in *Littke*. Paragraph 4.03a Assistance to Claimants states:

> All reasonable assistance will be extended to claimants in meeting the evidentiary requirements necessary to establish their claim under the applicable laws and regulations. They will be given every opportunity to establish entitlement to the benefits sought, including complete procedural and appellate rights. Information and advice provided will be complete and in words which the average person can understand. *All sources from which information may be elicited should be thoroughly developed prior to making decisions affecting entitlement.*

(Emphasis added). Paragraph 22.03 lists specific instructions for VA to obtain medical information from non-VA hospitals and doctors. Such requests for information are required "when it appears that such information is relevant and material to the disposition of the claim [under] 3.326(c) and (d)." M21–1 paragraph 22.03.

Appellant's record, like the record in *Littke*, should have been further developed pursuant to 38 C.F.R. § 19.182(a) (1990). As this Court said in *Littke*, 1 Vet.App. at 93, 38 C.F.R. § 19.182(a) (1990) requires "that the BVA make a determination as to the adequacy of the record and if it finds that the record before it is inadequate, remand is then mandatory rather than permissive." Remand is required in this case for VA to develop the record.

## V. CONCLUSION

The Court holds that the BVA did not provide adequate reasons or bases for its determination not to grant an increase in disability for appellant's psychiatric and intervertebral disk syndrome and for its determination on appellant's eligibility for total unemployability. The Court further holds that VA failed to assist appellant in gathering enough information to make an adequate determination of his claim and, further, that the BVA failed to consider appellant's claim under the criteria for non-service-connected pension.

Therefore, the decision of the Board is VACATED and the case is REMANDED to the BVA for further development and reconsideration of all relevant evidence, issues, and regulations in a manner consistent with this opinion.