Citation Nr: 1736729 
Decision Date: 08/31/17 Archive Date: 09/06/17

DOCKET NO. 13-00 218A ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in St. Petersburg, Florida


THE ISSUE

Entitlement to a total disability rating based on individual unemployability due to service-connected disability (TDIU) prior to June 14, 2016. 


REPRESENTATION

Veteran represented by: The American Legion


ATTORNEY FOR THE BOARD

M. Bilstein, Associate Counsel



INTRODUCTION

The Veteran served in active duty from February 1944 to November 1945, including service in World War II. He was awarded two Purple Heart Medals and the Combat Infantryman Badge.

This matter comes to the Board of Veterans' Appeals (Board) on appeal from an April 2010 rating decision issued by the Department of Veterans Affairs (VA) Regional Office (RO), which denied entitlement to a TDIU. 

In October 2013 and August 2015, the Board remanded the current TDIU claim on appeal for additional evidentiary development. The Board finds that there has been substantial compliance with the prior remand instructions and no further action is necessary. See D'Aries v. Peake, 22 Vet. App. 97 (2008) (holding that only substantial, and not strict, compliance with the terms of a Board remand is required pursuant to Stegall v. West, 11 Vet. App. 268 (1998)).

The Board notes that the Veteran has been in receipt of a combined 100 percent rating for his service-connected disabilities since June 14, 2016. As a 100 percent rating is the maximum payable, the period since June 14, 2016 is not for consideration in this appeal. 

This appeal has been advanced on the Board's docket pursuant to 38 C.F.R. § 20.900(c) (2017). 38 U.S.C.S. § 7107(a)(2) (LexisNexis 2017).


FINDINGS OF FACT

1. Prior to June 14, 2016, service connection was in effect bilateral hearing loss, rated as 10 percent disabling; posttraumatic stress disorder (PTSD), rated as 50 percent disabling; peripheral neuropathy of the right median nerve (major), rated as 30 percent disabling; shell fragment wound of the right thigh with right trochanteric pain condition, rated as 10 percent disabling; residuals of status post fragment wound of the right forearm, rated as 10 percent disabling; residuals of shell fragment wound of the right arm manifested by damage to muscle group IX (dominant), rated as 10 percent disabling; and tinnitus, rated as 10 percent disabling.

2. The Veteran's multiple service-connected disabilities preclude him from securing or following a substantially gainful occupation since August 19, 2009. 


CONCLUSION OF LAW

The criteria for a TDIU have been met since August 19, 2009. 38 U.S.C.S. 
§§ 1155, 5107 (LexisNexis 2017); 38 C.F.R. §§ 3.102, 3.340, 3.341, 4.16 (2017).


REASONS AND BASES FOR FINDINGS AND CONCLUSION

The Veteran contends that he is unemployable as a result of his service-connected disabilities, including peripheral neuropathy of the right median nerve, bilateral hearing loss, tinnitus, PTSD, residuals of a status post shell fragment wound of the right forearm, residuals of a status post shell fragment wound of the right arm with damage to muscle group IX, and shell fragment wound with trochanteric pain condition of the right thigh. In his August 2009 TDIU application, the Veteran asserted his service-connected disabilities render him unable to secure or follow a substantially gainful occupation as of 2000. 

It is the established policy of VA that all veterans who are unable to secure and follow a substantially gainful occupation by reason of service-connected disabilities shall be rated totally disabled. 38 C.F.R. § 4.16 (2017). A finding of total disability is appropriate, "when there is present any impairment of mind or body which is sufficient to render it impossible for the average person to follow a substantially gainful occupation." 38 C.F.R. §§ 3.340(a)(1), 4.15 (2017). Substantially gainful employment is defined as work which is more than marginal and which permits the individual to earn a living wage. Moore v. Derwinski, 1 Vet. App. 356 (1991).

A TDIU may be assigned, if the schedular rating is less than total, when the disabled person is, in the judgment of the rating agency, unable to secure or follow a substantially gainful occupation as a result of service-connected disabilities, provided that if there is only one such disability it is ratable at 60 percent or more, and that if there are two or more such disabilities at least one is ratable at 40 percent or more and the combined rating is 70 percent or more. 38 C.F.R. § 4.16(a) (2017).

For the purpose of one 60 percent disability, or one 40 percent disability in, the following will be considered as one disability: (1) disabilities of one or both upper or lower or one or both lower extremities, including the bilateral factor if applicable; (2) disabilities resulting from a common etiology or a single accident; (3) disabilities affecting a single body system, e.g., orthopedic, digestive, respiratory, cardiovascular-renal, neuropsychiatric; (4) multiple injuries incurred in action; or, (5) multiple disabilities incurred as a prisoner of war. 38 C.F.R. § 4.16(a) (2017). 

For a veteran to prevail on a TDIU claim, the record must reflect some factor that takes the claimant's case outside the norm. The sole fact that a veteran is unemployed or has difficulty finding employment is not enough, since a high rating in itself is recognition that the impairment makes it difficult to obtain and keep employment; the question is whether the claimant is capable of performing the physical and mental acts required for employment, not whether the claimant can find employment. See Van Hoose v. Brown, 4 Vet. App. 361, 363 (1993). Marginal employment shall not be considered substantially gainful employment. 38 C.F.R. § 4.16(a). Marginal employment exists when the Veteran's earned annual income is below the poverty threshold and in other limited circumstances, including but not limited to employment in a protected environment such as a family business or sheltered workshop. Id. 

In determining whether an appellant is entitled to a total disability rating based upon individual unemployability, neither the veteran's nonservice-connected disabilities nor advancing age may be considered. 38 C.F.R. §§ 3.341(a), 4.19. Factors to be considered are the veteran's education, employment history, and vocational attainment. See Ferraro v. Derwinski, 1 Vet. App. 326, 332 (1991). 

Here, the Veteran meets the schedular criteria for a TDIU as of June 24, 2008. Service connection has been established for bilateral hearing loss, rated as 10 percent disabling effective from August 24, 2007 to June 14, 2016; posttraumatic stress disorder (PTSD), rated as 50 percent disabling effective from June 24, 2008 to June 14, 2016; peripheral neuropathy of the right median nerve (major), rated as 30 percent disabling effective from April 21, 2004 to June 14, 2016; shell fragment wound of the right thigh with right trochanteric pain condition, rated as 10 percent disabling effective since October 29, 1946; residuals of status post fragment wound of the right forearm, rated as 10 percent disabling effective July 26, 2002; residuals of shell fragment wound of the right arm manifested by damage to muscle group IX (dominant), rated as 10 percent disabling effective August 24, 2007; and tinnitus, rated as 10 percent disabling effective August 24, 2007. 38 C.F.R. § 4.16 (a)(1). The Veteran's combined schedular rating was 80 percent from June 24, 2008 to June 14, 2016. 

The August 2009 TDIU application reveals that the Veteran completed two years of college, and no further, and was employed until 1995. The Veteran states that he became too disabled to work in 2000. VA examination reports corroborate the Veteran's statements insofar as they show that he worked as an electronic technician, repairing televisions, for approximately 40 to 50 years until 1995. At his July 2014 VA examination, the Veteran also reported that he went to technical night school and worked as a meat cutter and draftsman for approximately seven years before opening his own television installation/repair business. Treatment records and VA examination reports also show the Veteran worked part-time at a golf course until 2012. 

In the January 2013 substantive appeal, the Veteran reported that although he worked part-time at a golf course, he was earning approximately $85 per week, and that it did not amount to a living wage. He further asserted that due to his service-connected disabilities, he is unable to keep working. In support of his contention, the Veteran submitted federal income tax statements for 2006, 2007, 2010, and 2011 verifying that his income was below the poverty thresholds for those years. He also indicated he was not required to file tax returns for the years 2008, 2009, and 2012. As the aforementioned income was below the poverty threshold, the Board finds that the Veteran's part-time job constituted marginal employment. 

The evidence of record reflects that the Veteran has repeatedly complained about right-sided weakness and loss of motor skills since 2009. The evidence of record also shows that the Veteran has complained of hearing loss, tinnitus, and PTSD symptoms interfering with daily functioning. 

In September 2009, the Veteran reported that due to the shell fragment wound of his right thigh, he could not stand for extended periods. As for his service-connected disabilities of peripheral neuropathy of the right median nerve and residuals of shell fragment wounds to the right forearm and right arm (his dominant arm), the Veteran contended that his motor skills were worsening. He was unable to write, hold a cup, or sign his name. He also stated that due to his bilateral hearing loss he had difficulty hearing in a room with more than one person speaking, even with the help of hearing aids. The Veteran also endorsed a fear of loud noises and nightmares due to his service-connected PTSD. 

VA medical records from February 2010 to September 2010 show that the Veteran had progressively worsening hand dysfunction, especially with grasping and writing. In February 2010, his physician opined that the Veteran was 100 percent unemployable. At the September 2010 VA muscles and peripheral nerves examination, the Veteran complained of daily pain in his forearm and increasing weakness of his right arm. He also reported that he dropped things occasionally with his right hand and he had difficulty with writing. 

Similarly, private treatment records from July 2011 to June 2012 indicate that the Veteran continued to complain of paresthesia, loss of function, and pain in his dominant right arm. He also reported loss of hand dexterity and pain that radiated up and down his arm. The Veteran also stated that when working at his part-time job at the golf course, he developed severe pain, weakness, and an inability to perform overheard activities. His physician opined that the Veteran's right arm weakness was more likely related to his service-connected injuries than other current pathology. In April 2012, the Veteran reported that using his right arm at this part-time job was increasing his pain and that he was going to quit his job. He also noted that he had difficulty writing his own name and using his fingers to operate his computer mouse. 

At the August 2012 VA examination for muscular injuries, the Veteran reported that he has difficulty performing his maintenance duties at his part-time job twice a week, including lifting one gallon containers filled with sand. He also stated that he uses the golf cart to get around at work because he has difficulty with walking and already gave notice to his employer. The Veteran also indicated that he could no longer ride his bicycle due to his right leg condition. It was also becoming increasingly difficult to perform his woodworking hobbies due to his right hand weakness. The examiner noted that the Veteran was capable of sedentary duty employment based on his service-connected disabilities of peripheral neuropathy of the right median nerve and residuals of shell fragment wounds to the right thigh and right forearm. The examiner further stated that the Veteran's medical conditions do not prevent him from securing or following a substantially gainful occupation. The examiner did not consider the Veteran's service-connected PTSD, bilateral hearing loss, or tinnitus.

In December 2013, his private physician opined that the Veteran was unable to work due to his service-connected disabilities and that he was unable to write with his right arm. Furthermore, in January 2014, the Veteran's occupational therapist reported that the Veteran was unable to perform fine motor tasks with the dexterity required when using his right hand. The therapist also noted that the Veteran became fatigued easily and required frequent rest breaks when performing daily tasks. She opined that performing all the tasks required in a typical day had become increasingly challenging and it would make it impossible for the Veteran to return to work, despite improvements with therapy. 

As for PTSD, at the April 2010 VA examination, the Veteran reported that he experienced PTSD symptoms weekly to daily in frequency. However, the examiner opined the Veteran's PTSD symptoms did not interfere significantly with current occupational and social functioning. He further opined that based on his PTSD symptoms exclusively, the Veteran did not appear to be unemployable. The examiner did not consider the Veteran's other service-connected disabilities. 

Turning to the Veteran's bilateral hearing loss and tinnitus, at the April 2010 VA audiological examination, he reported difficulty with hearing and understanding in all situations that worsens when in the presence of competing sounds. The audiologist noted that the Veteran's functional hearing in conversational speech would be impaired and worse in the presence of background noises. She further stated that the Veteran's bilateral hearing loss would make it difficult if he were in a position of communicating with the public in a noisy environment or in a situation where he was required to communicate over a radio telephone or intercom system. Despite these difficulties, the audiologist opined that the Veteran's bilateral hearing loss did not preclude the Veteran from working in other types of physical or sedentary types of employment that do not require acute listening skills and that it would be minimally disabling in regards to employment. The audiologist did not consider the Veteran's other service-connected disabilities when rendering her opinion. 

Similarly, at the August 2012 VA audiological examination, the Veteran reported that it was hard for him to understand conversations. The August 2012 VA examiner opined that any one disability, such as hearing loss, does not preclude meaningful gainful work in either physical or sedentary employment. The examiner further reasoned that the Veteran's current hearing impairment may cause functional difficulties in vocations that require localization of sound as well as verbal communication when face-to-face communication is not possible but that functional difficulties associated with hearing impairment and deafness do not preclude meaningful and gainful employment in either physical or sedentary jobs. He stated that gainful employment is possible with state of the art amplification assistive technology and vocational rehabilitation. 

At a July 2014 VA audiological examination, the Veteran again reported that despite wearing VA-issued hearing aids, he still had difficulty understanding others. The July 2014 VA examiner noted that the Veteran's hearing loss impacts ordinary conditions of daily life, including his ability to work. 

The Veteran was afforded a general VA examination in July 2014 to assess whether the Veteran's combined service-connected disabilities would prevent him from obtaining and maintaining gainful employment. At the examination, the Veteran again reported that he quit his part-time job at the golf course in 2012. He also reported that prior to 2012 he did woodworking as a hobby. The examiner noted that the Veteran's peripheral nerve condition affects his ability to work as he has difficulties with lifting and holding heavy objects and using hand tools. Despite this, the examiner opined that the Veteran's service-connected disabilities of PTSD, hearing loss, tinnitus, and gunshot wound residuals in combination less likely as not prevent him from obtaining and maintaining gainful employment for which his education and occupational experience would otherwise qualify him. The examiner reasoned that the Veteran is able to communicate one-on-one with the examiner coherently, worked until his retirement in 1995, and was independent after retirement, including walking, pursuing a part-time job, and woodworking until 2012.

In March 2015, the Veteran again stated that his service-connected disabilities prevent him from leading an active lifestyle. He further explained that his PTSD causes loss of proper sleep and excess stress, and prevents him from securing sedentary work. 

In June 2015 and July 2015, the Veteran was afforded additional VA examinations for PTSD; residuals of shell fragment wounds to the right forearm, right arm, and right thigh; peripheral neuropathy; hearing loss; and tinnitus. Regarding PTSD, the Veteran reported problems with anger, irritability, obsessive locking, and sleeping and he endorsed suicidal thoughts. The June 2015 PTSD examiner noted that the Veteran has a depressed mood, anxiety, suspiciousness, chronic sleep impairment, mild memory loss, disturbances of motivation and mood, and difficulty in adapting to stressful circumstances, including work or a work like setting. The examiner opined the Veteran has occupational and social impairment with occasional decrease in work efficiency and intermittent periods of inability to perform occupational tasks, although generally functioning satisfactorily. 

As for the Veteran's residuals of shell fragment wounds, the July 2015 internal medicine examiner opined there is no impact to his ability to work, including keeping up with work requirements, as his conditions were in remission. The examiner similarly opined in regards to the Veteran's peripheral neuropathy but provided no rationale. 

In terms of his hearing loss and tinnitus, the Veteran reported that he has significant difficulty understanding speech even with his hearing aids and that his hearing is worsening. The July 2015 audiologist noted that the Veteran's hearing loss impacts ordinary conditions of daily life, including his ability to work. 

In February 2016, the Veteran's former employer stated that due to his service-connected disabilities the Veteran is no longer able to perform his work at the required level. He explained that the Veteran's job had consisted of pulling out and cleaning golf carts, which required strenuous physical labor and walking great distances per shift. 

In March 2016, the Veteran again reported that he could not use his right arm and hand. He drops things often and he is unable to use his fingers to pick things up. He also noted that he is no longer able to write. The Veteran also reported trouble sleeping and maintaining personal hygiene.

Resolving all doubt in the Veteran's favor, the Board finds that since August 19, 2009 the Veteran is unable to secure and follow a substantially gainful occupation by reason of his service-connected PTSD residuals of shell fragment wounds to the right forearm, right arm, and right thigh; peripheral neuropathy of the right median nerve; bilateral hearing loss; and tinnitus. Given his work history as an electronic technician, education, and the nature of his service-connected disabilities, the evidence suggests that he would be incapable of performing the acts required for employment. See Van Hoose, 4 Vet. App. at 363. It is unlikely that he would find a work environment that did not require background noise exposure or acute listening skills, or an environment where he would be limited to only face-to-face and one-on-one interactions. It is also unlikely that the Veteran would find a work environment that did not require use of his dominant right arm, manual dexterity of his dominant hand, lifting and holding objects, or using hand tools. Specifically, the Board finds that the symptoms described by the Veteran, and noted by the examiners, due to his multiple service-connected disabilities render him unemployable. To the extent the record suggests the Veteran is capable of employment due to his previous part-time job, the Board finds that the severity of his service-connected disabilities resulted in the Veteran quitting this job and renders him unlikely to turn that endeavor into substantial gainful employment. 

The Board also acknowledges that VA examiners did not find that the Veteran's multiple service-connected disabilities rendered him totally occupationally and socially disabled. However, these examiners did not consider the effects and symptoms of the Veteran's combined service-connected disabilities. Additionally, the August 2012 audiologist opined that gainful employment was possible with state of the art amplification assistive technology and vocational rehabilitation. However, the examiner was tasked with evaluating the Veteran's ability to work based on his education, work history, and severity of disabilities. The examiner's reliance on accommodations provided by the Americans with Disabilities Act went outside of the scope of what the regulations asked him to consider. Furthermore, applicable regulations place responsibility for the ultimate TDIU determination on VA, not a medical examiner. Geib v. Shinseki, 733 F.3d 1350 (Fed. Cir. 2013). 

However, the Board is persuaded by the opinions of the Veteran's private physicians, occupational therapist, and former employer who are familiar with the Veteran and opined that his employability in most job assignments would be impaired. In light of the above, the Board finds that the evidence of record supports the grant of TDIU due to service-connected disabilities since August 19, 2009. See 38 U.S.C.S. § 5107; 38 C.F.R. § 3.102 (2017); Gilbert v. Derwinski, 1 Vet. App. 49, 53-54 (1990). 



ORDER

A total disability rating based on individual unemployability due to service-connected disabilities is granted from August 19, 2009, and no earlier, subject to the rules and regulations governing the payment of VA monetary benefits.



____________________________________________
S.C. KREMBS
Veterans Law Judge, Board of Veterans' Appeals
Department of Veterans Affairs