http://www.va.gov/vetapp16/Files3/1621722.txt

Citation Nr: 1621722 
Decision Date: 05/31/16 Archive Date: 06/08/16

DOCKET NO. 10-47 233A ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Milwaukee, Wisconsin

THE ISSUES

1. Entitlement to an initial rating in excess of 10 percent for left hip internal derangement.

2. Entitlement to a total disability rating for compensation based on individual unemployability (TDIU).

3. Entitlement to special monthly compensation (SMC ) pursuant to 38 U.S.C.A. § 1114(s).

REPRESENTATION

Appellant represented by: The American Legion

ATTORNEY FOR THE BOARD

M. G. Mazzucchelli, Counsel

INTRODUCTION

The Veteran served on active duty from April 2008 to July 2008 and from February 2009 to February 2010.

This matter comes to the Board of Veterans' Appeals (Board) on appeal from a May 2010 rating decision issued by the Department of Veterans Affairs (VA) Regional Office (RO) in San Diego, California, which awarded service connection for left hip internal derangement and assigned a noncompensable disability rating, effective February 11, 2010. Jurisdiction over the case then transferred to the Milwaukee, Wisconsin, RO. In an October 2010 rating decision, the Milwaukee RO increased the Veteran's left hip disability rating to 10 percent, effective February 11, 2010. Then, in a June 2014 rating decision, the Milwaukee RO awarded a temporary evaluation of 100 percent effective August 5, 2013 based on surgical treatment necessitating convalescence and ordered the 10 percent evaluation to be restored November 1, 2013. However, as these increases did not represent a total grant of the benefits sought on appeal, the claim for increase remains before the Board. AB v. Brown, 6 Vet. App. 35 (1993).

In his December 2010 substantive appeal (VA Form 9), the Veteran requested a Board hearing before a Veterans Law Judge sitting at the RO. In a May 2012 Informal Hearing Presentation, the Veteran's representative indicated that he desired for the representative to prepare an Informal Hearing Presentation on his behalf instead of the previously requested hearing. As the hearing had not yet been scheduled, the request is deemed withdrawn. See 38 C.F.R. § 20.204(e) (2015).

In April 2013 and again in October 2015, the Board remanded the appeal for additional development. The claim now returns for further appellate review.

Additional evidence (specifically VA treatment records) was received subsequent to the December 2015 supplemental statement of the case. However, as the evidence is not pertinent to the claim decided here, a remand for RO consideration of the evidence is not necessary. See 38 C.F.R. § 20.1304(c) (2015).

Although not certified by the agency of original jurisdiction, because the issue of TDIU is a part of a claim for a higher rating, the Board must adjudicate whether a TDIU is warranted due to the Veteran's left hip disability alone. Rice v. Shinseki, 22 Vet. App. 447 (2009). Further, in light of the decisions of the United States Court of Appeals for Veterans Claims (Court) in Buie v. Shinseki, 24 Vet. App. 242, 250 (2011) and Bradley v. Peake, 22 Vet. App. 280 (2008), the Board must consider the Veteran's entitlement to special monthly compensation at the housebound rate. As such, the Board has identified the issues as stated on the title page.

FINDINGS OF FACT

1. The most probative evidence of record indicates that the Veteran's left hip internal derangement has been manifested by marked hip disability throughout the appeals period.

2. Since August 16, 2012, the Veteran's service connected left hip disability alone has prevented him from securing or following substantially gainful employment.

3. In addition to the Veteran's left hip disability, the Veteran has had a 70 percent rating for his service-connected PTSD since August 16, 2012. 

CONCLUSION OF LAW

1. The criteria for an initial 30 percent rating for hip internal derangement have been met. 38 U.S.C.A. §§ 1155, 5107 (West 2014); 38 C.F.R. §§ 3.102, 4.7, 4.40, 4.45, 4.71a, Diagnostic Code 5255 (2015).

2. The criteria for a grant of TDIU, based solely on left hip disability, have been met from August 16, 2012. 38 U.S.C.A. 38 U.S.C.A. §§ 1155, 5107(b) (West 2014); 38 C.F.R. §§ 3.102, 3.340, 3.341, 4.16, 4.19 (2015).

3. The criteria for special monthly compensation at the housebound rate, effective August 16, 2012, have been met. 38 U.S.C.A. §§ 1114(s), 5107(b) (West 2014); 38 C.F.R. §§ 3.102 , 3.350 (2015). 

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

I. Duties to Notify and to Assist

Under the Veterans Claims Assistance Act of 2000 (VCAA) VA has a duty to notify and assist a claimant in the development of a claim. 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5106, 5107, and 5126 (West 2014); 38 C.F.R. §§ 3.102, 3.156(a), 3.159, and 3.326(a) (2015).

The Veteran's claim for entitlement to a higher rating arises from his disagreement with the initial evaluation following the grant of service connection, so additional notice is not required and any defect in the notice is not prejudicial. See Hartman v. Nicholson, 483 F.3d 1311 (Fed. Cir. 2007); Dunlap v. Nicholson, 21 Vet. App. 112 (2007).

In addition, the Board finds that the duty to assist a claimant has been satisfied. The Veteran's service treatment records are on file, as are various post-service medical records. VA examinations have been conducted and opinions obtained. 

The Board also notes that actions requested in the prior remands have been undertaken. Pursuant to the April 2013 remand, the Veteran was issued a new supplemental statement of the case in June 2013, the Veteran's VA treatment records were associated with his claims file, and the Veteran underwent a VA examination in May 2013. Pursuant to the October 2015 remand, the Veteran's VA treatment records were updated and associated with his claims file and a new VA examination was afforded the Veteran in November 2015. These actions having been undertaken, the Board finds that there has been substantial compliance with the prior remand instructions and no further action is necessary. See D'Aries v. Peake, 22 Vet. App. 97 (2008) (holding that only substantial, and not strict, compliance with the terms of a Board remand is required pursuant to Stegall v. West, 11 Vet. App. 268 (1998)). 

After a careful review of the file, the Board finds that all necessary development has been accomplished, and therefore appellate review may proceed without prejudice to the Veteran. See Bernard v. Brown, 4 Vet. App. 384 (1993). 

II. Analysis

The Board has reviewed all the evidence in the record. Although the Board has an obligation to provide adequate reasons and bases supporting this decision, there is no requirement that the evidence submitted by the appellant or obtained on his behalf be discussed in detail. Rather, the Board's analysis below will focus specifically on what evidence is needed to substantiate each claim and what the evidence in the claims file shows, or fails to show, with respect to each claim. See Gonzales v. West, 218 F.3d 1378, 1380-81 (Fed. Cir. 2000) and Timberlake v. Gober, 14 Vet. App. 122, 128-30 (2000).

Initial Rating for Left Hip Disability

Disability ratings are determined by applying the criteria set forth in the VA Schedule of Rating Disabilities (Rating Schedule) and are intended to represent the average impairment of earning capacity resulting from disability. 38 U.S.C.A. § 1155; 38 C.F.R. § 4.1. Separate diagnostic codes identify the various disabilities. Disabilities must be reviewed in relation to their history. 38 C.F.R. § 4.1. Other applicable, general policy considerations are: interpreting reports of examination in light of the whole recorded history, reconciling the various reports into a consistent picture so that the current rating may accurately reflect the elements of disability, 38 C.F.R. § 4.2; resolving any reasonable doubt regarding the degree of disability in favor of the claimant, 38 C.F.R. § 4.3; where there is a question as to which of two evaluations apply, assigning the higher of the two where the disability pictures more nearly approximates the criteria for the next higher rating, 38 C.F.R. § 4.7; and, evaluating functional impairment on the basis of lack of usefulness, and the effects of the disability upon the person's ordinary activity, 38 C.F.R. § 4.10. See Schafrath v. Derwinski, 1 Vet. App. 589 (1991).

Where the appellant has expressed dissatisfaction with the assignment of an initial rating following an initial award of service connection for that disability, separate ratings can be assigned for separate periods of time based on the facts found - a practice known as "staged" ratings. Fenderson v. West, 12 Vet. App. 119 (1999).

Disabilities of the musculoskeletal system are primarily the inability, due to damage or infection in parts of the system, to perform the normal working movements of the body with normal excursion, strength, speed, coordination and endurance. It is essential that the examination upon which ratings are based adequately portray the anatomical damage, and the functional loss, with respect to all these elements. The functional loss may be due to absence of part, or all, of the necessary bones, joints and muscles, or associated structures, or to deformity, adhesions, defective innervation, or other pathology, or it may be due to pain, supported by adequate pathology and evidenced by the visible behavior of the claimant undertaking the motion. Weakness is as important as limitation of motion, and a part that becomes painful on use must be regarded as seriously disabled. A little used part of the musculoskeletal system may be expected to show evidence of disuse, either through atrophy, the condition of the skin, absence of normal callosity or the like. 38 C.F.R. § 4.40 (2015).

Evidence of pain, weakened movement, excess fatigability, or incoordination must be considered in determining the level of associated functional loss, taking into account any part of the musculoskeletal system that becomes painful on use. 38 C.F.R. § 4.40 (2015); DeLuca v. Brown, 8 Vet. App. 202 (1995). The provisions regarding the avoidance of pyramiding do not forbid consideration of a higher rating based on greater limitation of motion due to pain on use, including flare ups. 38 C.F.R. § 4.14 (2015). However, those provisions should only be considered in conjunction with the diagnostic codes predicated on limitation of motion. 38 C.F.R. §§ 4.40, 4.45 (2015); Johnson v. Brown, 9 Vet. App. 7 (1996).

The intent of the rating schedule is to recognize painful motion with joint or periarticular pathology as productive of disability. It is the intention to recognize actually painful, unstable, or malaligned joints, due to healed injury, as entitled to at least the minimum compensable rating for the joint. 38 C.F.R. § 4.59 (2015).

With respect to the joints, the factors of disability reside in reductions of their normal excursion of movements in different planes. Inquiry will be directed to these considerations: (a) less movement than normal (due to ankylosis, limitation or blocking, adhesions, tendon-tie-up, contracted scars, etc.); (b) more movement than normal (from flail joint, resections, nonunion of fracture, relaxation of ligaments, etc.); (c) weakened movement (due to muscle injury, disease or injury of peripheral nerves, divided or lengthened tendons, etc.); (d) excess fatigability; (e) incoordination, impaired ability to execute skilled movements smoothly; and (f) pain on movement, swelling, deformity or atrophy of disuse. Instability of station, disturbance of locomotion, interference with sitting, standing and weight-bearing are related considerations. 38 C.F.R. § 4.45 (2015). 

Additionally, Diagnostic Code 5010, used for rating traumatic arthritis, directs that the rating of arthritis be conducted under Diagnostic Code 5003. 38 C.F.R. § 4.71a, Diagnostic Code 5010. Diagnostic Code 5003 states that degenerative arthritis established by X-ray findings will be rated on the basis of limitation of motion under the appropriate diagnostic codes for the specific joint or joints involved. When, however, the limitation of motion is noncompensable under the appropriate diagnostic codes, a rating of 10 percent may be applied to each such major joint or group of minor joints affected by limitation of motion. The limitation of motion must be objectively confirmed by findings such as swelling, muscle spasm, or satisfactory evidence of painful motion. In the absence of limitation of motion, X-ray evidence of arthritis involving two or more major joints or two or more minor joint groups, will warrant a rating of 10 percent; in the absence of limitation of motion, X-ray evidence of arthritis involving two or more major joint groups with occasional incapacitating exacerbations will warrant a 20 percent rating. 38 C.F.R. § 4.71a, Diagnostic Code 5003 (2015). The above ratings cannot be combined with ratings based on limitation of motion of the same joint. 38 C.F.R. § 4.71a, Diagnostic Code 5003, Note (1) (2015). For the purpose of rating disability from arthritis, the hip is considered a major joint. 38 C.F.R. § 4.45 (2015).

The Board has considered multiple rating codes to determine if there is any basis to increase the Veteran's assigned rating. Such evaluations involve consideration of the level of impairment of his ability to engage in ordinary activities, to include employment, as well as an assessment of the effect of pain on those activities. 38 C.F.R. §§ 4.10, 4.40, 4.45, 4.59 (2015).

Pursuant to VA's Schedule for Rating Disabilities, the RO has assigned a 10 percent rating for the Veteran's left hip disability by analogy under Diagnostic Codes 5299-5253 and 5299-5255. When a particular disability is not listed among the diagnostic codes, a code ending in "99" is used; the first two numbers are selected from the portion of the schedule most approximating the Veteran's symptoms. 38 C.F.R. § 4.27. As hip internal derangement is not assigned a specific number, code 5299 is applied for rating the disability with other hip disabilities of the musculoskeletal system. Hyphenated diagnostic codes are used when a rating under one diagnostic code requires use of an additional diagnostic code to identify the specific bases for the evaluation assigned. 38 C.F.R. § 4.27. In this case Diagnostic Code 5299 refers to the left hip internal derangement disability, while the more specific Diagnostic Codes 5253 and 5255 refer to impairment of the thigh and impairment of the femur respectively. 38 C.F.R. § 4.71a.

Under the rating criteria pertaining to impairment of the thigh, a 10 percent rating is warranted if there is limitation of rotation of the affected leg so that the Veteran cannot toe-out more than 15 degrees or if there is limitation of adduction so that the Veteran cannot cross legs. A 20 percent rating is warranted if there is limitation of abduction so that motion is lost beyond 10 degrees. 38 C.F.R. § 4.71a, Diagnostic Code 5253.

Under the rating criteria pertaining to impairment of the femur, a 10 percent rating is warranted due to malunion of the femur with slight knee or hip disability, a 20 percent rating is warranted for malunion of the femur with moderate knee or hip disability, and a 30 percent rating is warranted for malunion of the femur with marked knee or hip disability. A higher rating under these rating criteria is not relevant as the remaining criteria do not pertain to hip disabilities. 

It should be noted that words "slight," "moderate" and "marked" as used in the various Diagnostic Codes are not defined in the VA Schedule for Rating Disabilities. Rather than applying a mechanical formula, the Board must evaluate all of the evidence, to the end that its decisions are "equitable and just." 38 C.F.R. § 4.6. It should also be noted that use of terminology such as "marked" by VA examiners and others, although an element of evidence to be considered by the Board, is not dispositive of an issue. All evidence must be evaluated in arriving at a decision regarding an increased rating. 38 C.F.R. §§ 4.2, 4.6.

The Veteran reported left hip pain in February 2009, during active duty service. At that time he was diagnosed with left proximal thigh tendonitis. His February 2010 X-ray evaluations showed no fracture or dislocations. His hip joint spaces were normal and there were no bone lesions. 

During a VA examination that same month, the Veteran reported hip pain with baseline discomfort at approximately 1-2 on the 10 point pain scale, with flare-ups at approximately 6-7. He stated that flare-ups were unpredictable with no clear precipitating factors though they could occur with significant activity. He cited rest as the alleviating factor. While the Veteran endorsed hip pain, he denied weakness or fatigue with the flare-ups. At that time, he noted that he was not having problems with his daily living activities and was able to stand and walk without limitation. 

A February 2010 VA examination showed no evidence of ankylosis. The examiner described the Veteran's range of motion for his hip as 0-125 degrees flexion, 0-30 degrees extension, 0-25 degrees adduction, 0-45 degrees abduction, 0-60 degrees external rotation, and 0-30 degrees internal rotation. The examiner noted that all range of motion at that time was painless and that the Veteran had a non-antalgic gait. He found that the Veteran had no additional functional impairment due to pain, no pain on three repetitions of use, and no fatigue, weakness, lack of endurance, or incoordination. 

The Veteran filed his notice of disagreement in June 2010, claiming his hip pain was getting progressively worse. He also argued that there was a mistake in his February 2010 VA examination as he had stated his hip pain was normally 3-4 on the 10 point pain scale with flare-ups reaching 8-9, but the examiner had noted his pain at 1-2 with flare-ups at 6-7. The Veteran stated that his "hip is constantly either hurting or popping."

The Veteran continued to endorse hip pain throughout his VA treatment records. In August 2010, he complained of hip pain during his general medical consult. In October 2010, he obtained a rheumatology consult, where he described occasionally feeling a pop in his hip area. The rheumatologist noted that the Veteran could go through the full range of motion with the exception of the extreme internal rotation. It was his impression that the Veteran's hip pain was likely a soft tissue injury. 

During reserve inactive duty training in June 2011, the Veteran reported experiencing sharp pain radiating from his hip to his knee and pain with internal and external rotation of the left hip. He was put on light duty for the remainder of his annual training. 

In August 2011, the Veteran's VA treatment records contain X-ray and MRI reports showing findings consistent with left hip femoral acetabular impingement. During that same month, the Veteran obtained a VA orthopedic consult for his left hip pain. He reported to the orthopedist that he was experiencing sharp pain in his left hip but no catching or locking. The pain was the worst with significant range of motion to his hip during open external and internal rotation. However, on physical examination, the orthopedist noted that the Veteran had mild tenderness with both internal and external range of motion endpoints but did maintain good internal and external range of motion. Veteran could walk without a limp. The orthopedist also opined that the Veteran was suffering from left hip impingement. 

The Veteran saw an orthopedist again in September 2012. During that appointment, the Veteran stated that he thought his hip was getting worse. He said that he could no longer run and had pain with weight bearing while walking. He also endorsed popping and catching in his hip. The Veteran had developed severe pain with flexion, internal rotation, and adduction of the left hip. The orthopedist stated that the Veteran had positive impingement signs. 

The Veteran went to physical therapy in October 2012. The therapist noted that the Veteran was complaining of worsening symptoms so that he could not use the treadmill. The Veteran's flexion, internal rotation, and abduction were all restricted and painful. The therapist noted that the Veteran was prone to hip flexion tightness and internal and external rotation tightness. Then in February 2013, the Veteran underwent an MRI, which showed a tear of the superior labrum of his left hip; transitional bump at the lateral margin of the femoral head; and a herniation pit in the femoral neck. 

A February 2013 treatment record noted that the Veteran needed an injection of long-acting anaesthetic into the left hip joint space.

In May 2013, the Veteran underwent another VA examination. The Veteran stated that, since his last VA examination, he had had increasing pain that limited his walking, standing, and sex life. He described having difficulty getting around the campus of his school and having some limitations to what he could do around the house, though he could still care for himself. He also reported having flare-ups.

The VA examiner noted the Veteran's range of motion to be: 0-100 degrees of flexion; 0-5 degrees of extension; 0-15 degrees of adduction and not so limited that the Veteran could not cross his legs; 0-25 degrees of abduction; and, 0-30 degrees of external rotation and 0-20 degrees of internal rotation, therefore, not limited such that Veteran could not toe-out more than 15 degrees. However, the Veteran was not able to perform repetitive-use testing as the pain after the initial evaluation was too much. The Veteran suffered no pain on palpation and his muscle strength was normal for bilateral hip flexion, hip abduction, and hip extension. He was not suffering from ankylosis, malunion or nonunion of the femur, a flail hip joint, or a leg length discrepancy. 

The May 2013 VA examiner opined that the Veteran did have additional limitations in range of motion following the attempted repetitive-use testing and had function loss or impairment. The Veteran was exhibiting less movement than normal, pain on movement, and interference with sitting, standing, and weight-bearing on the left hip. The VA examiner noted that the Veteran's hip pain was interfering with his school and other activities. He opined that the Veteran's symptoms had increased in severity since his last examination. Lastly, he stated that the Veteran's condition would limit him to sedentary work that allowed for breaks as needed, and that the Veteran's core activities of daily living were not affected yet some of his expanded ones were limited but not restricted because of his pain. 

The Veteran underwent surgery on his left hip in August 2013. Afterwards, he attended physical therapy. In November 2013, the Veteran's physical therapist summarized his eight treatment sessions noting that there were initial improvements in his pain symptoms, but the pain returned when they started gentle strengthening. He stated that the Veteran's pain was on average 5 out of 10 on the pain scale. He was showing much less antalgia from pain but was not tolerating exercises or activities that involved active hip flexion. 

In January 2014, the Veteran submitted a statement to VA declaring that he could no longer work due to being physically unable because of pain in his left hip. 

In June 2014, a VA examiner opined that the Veteran's left hip conditions that necessitated his surgery were as likely as not a clarification of his service-connected hip internal derangement diagnosis. Due to this opinion, the Veteran was temporarily granted 100 percent rating for his period of recovery. 

The Veteran continued to complain of left hip pain at a June 2014 general medicine check-up, stating that it was still sore, stiff, tight and would pop. During the physical examination, the physician noted pain with left hip abduction, adduction, and internal rotation. She also noted a tender superficial muscle in the left anterior hip. The Veteran reiterated his complaints during a preventative health screening in September 2015. 

On VA examination in November 2015, the Veteran noted minimal improvements since his hip surgery. He particularly described continued hip weakness and limited range of motion. He also endorsed continued pain, described as 8 out of 10 at rest and 9 out of 10 with movement. He was taking tramadol to bring the pain level down to 6 or 7. He reported daily flare-ups with activity or use. He stated that he was unable to stand or sit for any significant periods of time without pain.

The VA examiner described the Veteran's range of motion as abnormal or outside of normal range. The Veteran's range of motion was as follows: 0-90 degrees flexion; 0-20 degrees extension; 0-20 degrees abduction; 0-10 degrees adduction and not so limited that he could not cross legs; 0-30 degrees external rotation; and, 0-30 degrees internal rotation. The Veteran developed pain at the upper degrees of his range of motion. He also demonstrated evidence of pain at weight bearing but no objective evidence of localized tenderness or pain on palpation of the joint or associated soft tissue. There was no objective evidence of crepitus. The Veteran was able to perform repetitive use testing with no additional loss of function or range of motion. The Veteran showed a reduction in muscle strength due to his service-connected condition to 4/5 or active movement against some resistance. However, there was no muscle atrophy. 

The Veteran was not experiencing a flare-up at the time, and therefore, the VA examiner could not opine as to the effects of a flare-up. However, the VA examiner was able to report that the Veteran did not have ankylosis, malunion or nonunion of the femur, a flair hip joint, or a leg length discrepancy. Lastly, the VA examiner opined that the Veteran would be unable to perform significant work due to his inability to stand or sit for significant periods of time without pain. 

As mentioned above, the RO rated the Veteran's left hip disability by analogy under Diagnostic Codes 5299-5253 and 5299-5255, and awarded the Veteran the minimum compensable rating for the joint due to painful motion. 

The Board finds that as the Veteran's service connected left hip disability is productive of multiple symptoms, it is best evaluated under Diagnostic Code 5255. In light of the evidence of record showing pain, limitation of motion, interference with sleep, and difficulty with walking and standing, the Veteran's left hip disability has been most consistent with the 30 percent rating available under that Code for marked hip disability throughout the period on appeal. That rating is the highest available under that Code based on hip disability.

Additionally, a review of the record demonstrates that neither the assignment of a separate or higher disability rating in excess of 30 percent is warranted for the Veteran's left hip disability. The Veteran has never been diagnosed with ankylosis of the hip; therefore an evaluation under Diagnostic Code 5250 is not appropriate. The Veteran's thigh extension has only once been limited to 5 degrees extension during his May 2013 VA examination. There is no other record of the Veteran's thigh extension being that low. In fact, during his most recent VA examination, the Veteran's extension range of motion was up to 20 degrees with pain. Therefore an evaluation under Diagnostic Code 5251 is not appropriate. The Veteran's flexion has always exceeded 45 degrees, so an evaluation under Diagnostic Code 5252 is also not appropriate. The Veteran has never been diagnosed with a flail hip joint, and is therefore disqualified from being evaluated under Diagnostic Code 5254. 

Lastly, while the November 2015 VA examiner indicated that imaging studies documented arthritis in the left hip, arthritis is rated on the basis of limitation of motion under the diagnostic codes for the specific joint involved and cannot be combined with ratings based on limitation of motion of the same joint. 38 C.F.R. § 4.71a, Diagnostic Code 5003. The 30 percent rating assigned based on marked hip disability contemplates some limitation of motion. Therefore, the Veteran could not receive an additional or higher disability rating under the arthritis diagnostic codes.

The Board has considered whether the Veteran's left hip disability presents an exceptional or unusual disability picture as to render impractical the application of the regular schedular standards such that referral to the appropriate officials for consideration of an extraschedular rating is warranted. See 38 C.F.R. § 3.321(b)(1); Bagwell v. Brown, 9 Vet. App. 337, 338-39 (1996). The threshold factor for extraschedular consideration is a finding that the evidence before VA presents such an exceptional disability picture that the available schedular evaluations for that service-connected disability are inadequate. See Fisher v. Principi, 4 Vet. App. 57, 60 (1993). ("[R]ating schedule will apply unless there are 'exceptional or unusual' factors which render application of the schedule impractical."). Here, the rating criteria assignable for a marked hip disability reasonably describe the Veteran's disability level and symptomatology as they consider factors including the Veteran's limited motion due to pain, and provide for a higher rating for additional or more severe symptomatology than is shown by the evidence as the rating criteria would provide a higher rating should the Veteran's range of motion decrease due to his left hip disability. Thus, his disability picture is contemplated by the rating schedule, and the assigned schedular evaluation is, therefore, adequate. See Thun v. Peake, 22 Vet. App. 111, 115 (2008).

TDIU

The law also provides that a total disability rating based on individual unemployability due to service-connected disability may be assigned where the veteran is rated at 60 percent or more for a single service-connected disability, or rated at 70 percent for two or more service-connected disabilities and at least one disability is rated at least at 40 percent, and when the disabled person is unable to secure or follow a substantially gainful occupation as a result of the service-connected disability. 38 C.F.R. §§ 3.340, 3.341, 4.16(a). 

Marginal employment shall not be considered substantially gainful employment. 38 C.F.R. § 4.16(a). Factors to be considered are the veteran's education and employment history and loss of work-related functions due to pain. Ferraro v. Derwinski, 1 Vet. App. 326, 330, 332 (1991).

Individual unemployability must be determined without regard to any nonservice-connected disabilities or the veteran's advancing age. 38 C.F.R. § 3.341(a); see also 38 C.F.R. § 4.19 (age may not be a factor in evaluating service- connected disability or unemployability); Van Hoose v. Brown, 4 Vet. App. 361, 363 (1993).

VA has a "well-established" duty to maximize a claimant's benefits. See Buie v. Shinseki, 24 Vet. App. 242, 250 (2011); AB v. Brown, 6 Vet. App. 35, 38 (1993); see also Bradley v. Peake, 22 Vet. App. 280 (2008). This duty to maximize benefits requires VA to assess all of a claimant's disabilities to determine whether any combination of disabilities establishes entitlement special monthly compensation (SMC ) under 38 U.S.C.A § 1114. See Bradley, 22 Vet. App. 280, 294 (2008) (finding that SMC "benefits are to be accorded when a Veteran becomes eligible without need for a separate claim"). Indeed, as noted in Bradley, VA must consider a TDIU claim despite the existence of a schedular total rating if VA finds the separate disability supports a TDIU rating independent of the other 100 percent disability rating. See Bradley, 22 Vet. App. 280, 294 (2008); see also DVA Sum. Op. Gen. Counsel Prec., 75 Fed. Reg. 11229-04 (March 10, 2010) (withdrawing VAOPGCPREC 6-99, 64 Fed. Reg. 52375 (1999) (the logic of Bradley suggests that if a Veteran has a schedular total rating for a particular service-connected disability and subsequently claims TDIU for a separate disability, VA must consider the TDIU claim despite the existence of the schedular total rating and award SMC under section 1114(s) if VA finds the separate disability(ies) support a TDIU rating independent of the other 100 percent disability rating).

The Veteran's service-connected disabilities are PTSD with alcohol abuse, rated as 70 percent disabling from August 16, 2012; left hip internal derangement, now rated as 30 percent disabling from February 11, 2010; and bilateral tinnitus, rated as 10 percent disabling from February 11, 2010. Thus, he first met the schedular criteria for TDIU from August 16, 2012, based on being in receipt of a combined rating of at least 70 percent (in this case 80 percent) for two or more service-connected disabilities, with at least one disability rated at least at 40 percent (the PTSD rated at 70 percent). 

The record shows that the Veteran has been precluded from securing and following substantially gainful employment by reason of his service-connected left hip disability from August 16, 2012, the date he met the schedular criteria for TDIU.

On a VA Form 21-8940 completed by the Veteran in February 2014, he reported that he had become too disabled to work in August 2013 due in part to his left hip disability. In an April 2015 written statement, the Veteran detailed his work history. He reported that he had worked full-time at Meister Cheese from March 2010 to June 2010, but had to quit because of hip pain; that he had been in college from August 2010 to May 2012; that he had worked at K. Lee Construction and Cabinetry from June 2012 to May 2014, but left due in part to hip pain; that he worked at Walmart part-time from June 2013 to July 2013 but left due to hip pain; that he worked for two days in February 2014 at Scott's Industries, but left due to hip pain; and that he had worked since May 2014 at D and P Enterprises part-time doing landscaping but had missed significant work due to hip pain and pain medication.

The May 2013 VA examiner noted that the Veteran's left hip disability affected his ability to work and caused interference with sitting, standing, and/or weightbearing. The December 2015 VA examiner noted that the Veteran would be unable to perform significant work due to his inability to stand or sit for significant periods of time without pain. 

The evidence shows that the Veteran has worked at least part-time on occasion during the period since August 16, 2012, however based on the Veteran's report of having had to leave jobs due to his left hip symptoms, the Board finds that the Veteran has been engaged in no more than marginal employment. Thus the Board finds that a grant of TDIU, based on left hip disability alone dating from August 16, 2012, is warranted. See Rice v. Shinseki, 22 Vet. App. 447 (2009) (holding that when evidence of unemployability is submitted at the same time that the Veteran is appealing the initial rating assigned for a disability, a claim for TDIU will be considered part and parcel of the claim for benefits for the underlying disability). 

SMC

As stated before, VA has a "well-established" duty to maximize a claimant's benefits. See Buie v. Shinseki, 24 Vet. App. 242, 250 (2011); AB v. Brown, 6 Vet. App. 35, 38 (1993); see also Bradley v. Peake, 22 Vet. App. 280 (2008) (finding that SMC "benefits are to be accorded when a Veteran becomes eligible without need for a separate claim" and remanding, pursuant to VA's duty to maximize benefits, for VA to determine whether the Veteran's posttraumatic stress disorder, rated 70 percent disabling, would entitle him to a TDIU and, therefore, to SMC). 

Special monthly compensation is payable where the Veteran has a single service-connected disability rated as 100 percent and (1) has additional service-connected disability or disabilities independently ratable at 60 percent, separate and distinct from the 100 percent service-connected disability and involving different anatomical segments or bodily systems, or (2) is permanently housebound by reason of service-connected disability or disabilities. This requirement is met when the Veteran is substantially confined as a direct result of service-connected disabilities to his or her dwelling and the immediate premises or, if institutionalized, to the ward or clinical areas and it is reasonably certain that the disability or disabilities and resultant confinement will continue throughout his or her lifetime. 38 U.S.C.A. § 1114(s); 38 C.F.R. § 3.350(i).

Subsection 1114(s) requires that a disabled Veteran whose disability level is determined by the ratings schedule must have at least one disability that is rated at 100 percent in order to qualify for the special monthly compensation provided by that statute. Under the law, subsection 1114(s) benefits are not available to a Veteran whose 100 percent disability rating is based on multiple disabilities, none of which is rated at 100 percent disabling.

In this case the Board awards the Veteran a TDIU based solely on his left hip disability effective from August 16, 2012. For SMC purposes this disability satisfied the requirement of a "service-connected disability rated as total." See Buie v. Shinseki, 24 Vet. App. 242, 251 (2011); see also Bradley v. Peake, 22 Vet. App. 280, 293 (2008). The Veteran has also had an additional disability rated at 60 percent or higher since August 16, 2012 (his service-connected PTSD with alcohol abuse, which has been assigned an initial 70 percent rating from August 16, 2012). Thus, in light of the Court's decisions in Bradley and in Buie, entitlement to SMC at the housebound rate under 38 U.S.C.A. § 1114(s) is granted, effective August 16, 2012. 
ORDER

Subject to the law and regulations governing payment of monetary benefits, an initial 30 percent rating for left hip internal derangement is granted.

Subject to the law and regulations governing payment of monetary benefits, a grant of TDIU based on left hip internal derangement alone is granted effective August 16, 2012.

Subject to the law and regulations governing payment of monetary benefits, entitlement to special monthly compensation at the housebound rate under 38 U.S.C.A. § 1114(s) is granted, effective August 16, 2012.

____________________________________________
S.C. KREMBS
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs