﻿Citation Nr: AXXXXXXXX
Decision Date: 12/27/18 Archive Date: 12/26/18

DOCKET NO. 181019-750
DATE: December 27, 2018
ORDER
Entitlement to a total disability rating for individual unemployability (TDIU) is denied.
FINDING OF FACT
The evidence of record does not show that the Veteran is, or has been, unable to obtain or maintain substantially gainful employment as a result of her service-connected disabilities.
CONCLUSION OF LAW
The criteria for a TDIU have not been met. 38 U.S.C. §§ 1155, 5103A, 5107; 38 C.F.R. §§ 3.102, 3.340, 3.341, 4.16, 4.18, 4.19.
REASONS AND BASES FOR FINDING AND CONCLUSION
The Veteran had active military service from April 1979 to February 1985.
This matter comes before the Board of Veterans’ Appeals (Board) on appeal from a February 2018 rating decision of the Regional Office (RO) of the Department of Veterans Affairs (VA). On June 1, 2018, the Veteran elected to participate in the VA initiative under the Appeals Modernization Act, and requested a higher-level review by the RO, in which the evidentiary record closed upon receipt of the Veteran’s election for higher-level review. A June 2018 higher-level review decision by the RO affirmed the February 2018 rating decision that had denied the Veteran’s claim for TDIU. In October 2018, the Veteran elected to appeal to the Board by direct review, a process in which the Board decision is based upon the evidence of record at the time of the prior decision. 
Under the Appeals Modernization Act, favorable findings made by the RO are binding on the Board absent clear and convincing evidence to the contrary and will not be discussed at length in this decision. In this case, the RO made a favorable finding that the Veteran met the schedular requirements for a TDIU.
1. Entitlement to a total disability rating for individual unemployability 
Disability evaluations are determined by comparing the Veteran’s present symptomatology with the criteria set forth in the VA’s Schedule for Ratings Disabilities. 38 U.S.C. § 1155; 38 C.F.R. § Part 4.
Total disability will be considered to exist when there is present any impairment of mind or body which is sufficient to render it impossible for the average person to follow a substantially gainful occupation. 38 C.F.R. § 3.340. Total disability ratings for compensation may be assigned where the schedular rating is less than total when the disabled person is unable to secure or follow a substantially gainful occupation as a result of service-connected disabilities, provided that, if there is only one such disability, the disability shall be ratable at 60 percent or more. If there are two or more such disabilities, there shall be at least one disability ratable at 40 percent or more and sufficient additional disability to bring the combined rating to 70 percent or more. 38 C.F.R. § 4.16 (a). If the schedular rating is less than 100 percent, the issue of unemployability must be determined without regard to the advancing age of the veteran. 38 C.F.R. §§ 3.341 (a), 4.19. Factors to be considered are the veteran’s education, employment history and vocational attainment. Ferraro v. Derwinski, 1 Vet. App. 326, 332 (1991).
Being unable to maintain substantially gainful employment is not the same as being 100 percent disabled. “While the term ‘substantially gainful occupation’ may not set a clear numerical standard for determining TDIU, it does indicate an amount less than 100 percent.” Roberson v. Principi, 251 F.3d 1378 (Fed Cir. 2001).
A TDIU claim “presupposes that the rating for the [service-connected] condition is less than 100 percent, and only asks for TDIU because of ‘subjective’ factors that the ‘objective’ rating does not consider.” Vettese v. Brown, 7 Vet. App. 31, 34-35 (1994). Assignment of a TDIU evaluation requires that the record reflect some factor that “takes the claimant’s case outside the norm” of any other veteran rated at the same level. Van Hoose v. Brown, 4 Vet. App. 361, 363 (1993) (citing 38 C.F.R. §§ 4.1, 4.15). The sole fact that a claimant is unemployed or has difficulty obtaining employment is not enough. A disability rating in itself is recognition that the impairment makes it difficult to obtain or keep employment, but the ultimate question is whether the veteran can perform the physical and mental acts required by employment, not whether he or she can find employment. Id.
The Veteran filed the current claim for TDIU in January 2018. Her service-connected disability ratings at the time of the higher level review decision were as follows: a 50 percent disability rating for status post abdominal hysterectomy with right salpingo-oophorectomy and left oophorectomy, effective February 16, 1999; a 30 percent disability rating for degenerative joint disease of the left ankle, effective January 1, 2007; a 30 percent disability rating for bilateral pes planus with heel spurs, effective January 12, 2017; a 10 percent disability rating for hypertension, effective February 16, 1999; a 10 percent disability rating for status post degenerative joint disease of the right ankle, effective April 1, 2010; a noncompensable disability rating for hallux valgus of the left great toe, effective May 29, 1990; and a noncompensable disability rating for hallux valgus of the right great toe, effective May 29, 1990. See 38 C.F.R. § 4.25. Favorable findings by the RO indicate that the Veteran met the schedular requirements for a TDIU, and has throughout the period on appeal, and the Board has not identified clear and convincing evidence to rebut this finding. As such, the schedular requirements of 38 C.F.R. § 4.16(a) are conceded as having been met. Further, the record indicates that the Veteran has not been employed since 2002. Thus, the question remaining is whether the Veteran is unable to secure and follow a substantially gainful occupation due to her service-connected disabilities. 
The Board finds that the Veteran is not unable to secure and follow a substantially gainful occupation due to her service-connected disabilities. The medical evidence indicates that the Veteran experiences some occupational impairment, but that her impairments do not rise to the level of preventing her from securing or following substantially gainful occupation solely because of service-connected disabilities. Throughout the period on appeal, the Veteran asserted that she was unable to work due to her bilateral ankle and feet disabilities, for which she is service-connected. However, a review of all medical evidence of record shows that the Veteran’s service-connected disabilities do not preclude her from working in a setting where she would not be required to stand or walk for prolonged periods. As such, she is not unable to secure and follow a substantially gainful occupation, especially considering her experience and background working as a forklift operator, a job which did not require her to stand on her feet all day long, and for which she has indicated did not cause her the same problems as her subsequent position in the production area, which required her to stand on her feet for all or most of the day. 
VA records indicate that the Veteran achieved the rank of E-5 in service, and served as a material storage and holding specialist and as a physical activities specialist. After separating from service, the Veteran worked in production and warehouse work for Proctor and Gamble from June 1986 to January 1995, and then as a forklift operator for Miller Brewing Company from January 1995 until her employer moved her to the production area in 2001. She claims that she was unable to stand for the long hours that were required in this new position due to her service-connected feet and ankle disabilities, and that caused her employment to end in 2002. The Veteran asserts that she has not been able to work since then due to her service-connected disabilities.
The Veteran submitted an application for a TDIU in June 2017 with a previous TDIU claim. Therein, she asserted that her service-connected bilateral foot condition prevented her from securing or following any substantially gainful occupation. She reported that she last worked in 2002, but left her job because of her disability. She wrote that she had not tried to obtain employment since 2002, when she became too disabled to work. She reported having completed high school, but had no additional education or training since then.
The Veteran was afforded a VA foot conditions examination in June 2017 to assess the severity of her service-connected foot conditions, specifically, her bilateral hallux valgus and her bilateral pes planus with heel spurs. The examiner found that the Veteran had a mild hallux valgus of the right toe only, and that she did not have any pain in that area. Rather, he found that the Veteran had pain of her “feet” inclusive of her ankles, and the Veteran saw the ankle as being part of the foot, and, thus, had been referring to her ankle problems as foot pain. The examiner found that the Veteran also had bilateral mild to moderate pes planus that did not cause any foot problems or pain. Thus, the examiner concluded the Veteran’s service-connected foot conditions did not impact her ability to perform any type of occupational task, such as standing, walking, lifting, sitting, etc.
The Veteran was afforded a VA ankle conditions examination in November 2017. She reported that her service-connected bilateral ankle conditions prevented her from standing longer than 15 minutes. She stated that she had worked for Miller Brewery for about eight years on steel floors and, by the end of the workday, her ankles were as big as “elephant legs.” She also stated that, prior to that employment, she had worked at Proctor and Gamble on concrete floors. She reported that standing on them for a short period of time would cause swelling and pain, depending on what she was doing. The pain was usually a sharp pain, ranging from a two to an eight out of ten after standing on her feet for fifteen minutes or longer. The examiner concluded that the Veteran’s service-connected ankle conditions impacted her ability to perform occupational tasks, in that she was unable to walk or stand for extended periods of time.
The Veteran was afforded another VA foot conditions examination in December 2017. She reported having intermittent pain in her feet a few times a week and having a strange, sometimes painful, sensation under the great toe with weight-bearing. She also complained of pain in the longitudinal arch area in both feet when standing more than 15 minutes. The Veteran stated that she had had balance problems since her bilateral foot-ankle fusion surgery about five years prior, and that she had fallen four to five times in the previous two years and needed a cane to walk. She stated that the foot pain limited her ability to stand for prolonged periods. On examination, the examiner noted the Veteran had pain on the use of both feet, which was accentuated by use. There was no indication of pain on manipulation or of swelling in the feet. The Veteran was noted as using a cane to assist with ambulation. The examiner found that the Veteran’s contributing factors of disability included bilateral pain on weight-bearing, bilateral disturbance of locomotion, and bilateral interference with standing. The examiner noted that the Veteran experienced a functional loss when her feet were used repeatedly over a period of time, in that she was limited in prolonged weight-bearing. He further stated that the Veteran’s service-connected foot conditions impacted her ability to perform occupational tasks, but his explanation for this statement was based solely on the Veteran’s reports. He explained that the Veteran stated she last worked in 2002. She had been a forklift driver but was later placed on the production line because her job was replaced by robots. On the production line, she had difficulty standing for long periods of time. 
VA treatment records during the appeal period do not show that the Veteran’s service-connected disabilities caused functional limitations beyond what the VA examinations revealed. They did not even show that the Veteran sought treatment for her feet or ankles during the appeal period. To the contrary, the records reflect that, on more than one occasion, the Veteran denied having foot or ankle pain (See VA treatment notes dated August 1, 2017 where the Veteran denied any joint pains and May 15, 2017 where the Veteran only disclosed musculoskeletal pain and swelling in her knees and back and implied her assistive devices were due to these conditions). The Veteran did seek treatment for numerous other conditions during the appeal period, and complained of many ailments, but none were related to her service-connected ankles and feet. 
The Veteran submitted a written statement with her current claim for a TDIU in January 2018. She attached evidence that she stated showed that she was unable to work due to her service-connected bilateral foot condition. The evidence she submitted included a May 2004 private treatment record, a September 2002 determination of the Employment Security Commission of North Carolina (ESCNC), a June 2008 VA treatment record, and a Social Security Administration (SSA) Notice of Award. Her representative also submitted a statement in May 2018, arguing that the Veteran was entitled to a TDIU, as shown by the medical evidence and the fact that SSA recognized the severity of the Veteran’s disabilities.
The Board notes that the documents submitted by the Veteran in January 2018 concern to the severity of her service-connected conditions prior to the appeal period. However, the Board has considered them, as they pertain to why the Veteran became unemployed in 2002, and help show the total picture of the Veteran’s disability throughout her unemployment. Upon consideration of the evidence of record prior to the appeal period, however, the totality of the record does not show that the Veteran became unemployed in 2002 solely due to any service-connected conditions. The Veteran has filed multiple claims for TDIU since filing her first TDIU claim in 2002. Thus, there are years of evidence associated with the claims file which predate the appeal period and speak to conditions leading to her becoming unemployed in 2002, and remaining unemployed for years thereafter.
As to the SSA disability benefits the Veteran and her representative have referenced, a May 2005 SSA Disability Determination states that she received benefits due to her disabling mood disorders and anxiety-related disorders. Remarks on this SSA Disability Determination form state that the Veteran was unable to meet the mental demands of unskilled work. Further, the Veteran’s SSA disability application is also of record. In her August 2004 SSA Form 3368, the Veteran stated that the conditions limiting her ability to work were: loss of organ, high blood pressure, ankle and feet problems, and mental [conditions] and depression. She affirmed that the conditions listed caused her to work fewer hours and have attendance issues, and explained that sometimes she would miss work because she could not concentrate or because she would get nervous and upset. She then stated that her employer terminated her because she missed too much work due to her disability. While she had explicitly stated that her psychiatric disabilities caused her to miss work, she did not explicitly allege that any of her currently service-connected conditions contributed to her absenteeism issues when applying for SSA disability benefits.
As to the 2002 ESCNC determination that the Veteran submitted in January 2018, the Board notes that the Veteran had also submitted this document in January 2005 in support of claims for service connection for PTSD and for a TDIU. Specifically, in January 2005, the Veteran submitted a written statement in support of a claim, and wrote that her PTSD was a contributing factor in her inability to perform sedentary work, but it was not the main cause of her inability to work. With this statement, she had submitted the September 2002 ESCNC determination, which found that the Veteran separated from her employment with Miller Brewing Company on August 8, 2002 because the employer was not satisfied with the Veteran’s attendance record, as she had absenteeism due to medical reasons. Thus, this ESCNC determination does not show that the Veteran’s service-connected disabilities rendered her unemployed, much less unemployable, when she stopped working in 2002. Rather, the record as a whole reflects that the Veteran suffered multiple disabilities at that time, and she is not service-connected for all of them, in particular, she is not service connected for any mental conditions. The ESCNC determination did not state which medical condition(s) led to her absenteeism, and is not probative in determining whether her service-connected disabilities led to her unemployment.
As to the particular excerpts of private and VA medical treatment records the Veteran submitted with her current claim in January 2018, the Board does not find that these substantiate the Veteran’s claim. The Veteran’s private provider wrote in the May 2004 treatment note that the Veteran lost her job due to her painful feet. He stated she was having difficulty standing and constant peripheral edema. He also noted that she was on disability for chronic depression. This provider’s statement that the Veteran lost her job due to her painful feet is not a medical opinion, but, rather, is the provider’s notes of the Veteran’s history, as told to him by the Veteran. He did not make a medical finding that she was unable to obtain or maintain substantially gainful employment due to any of her service-connected disabilities. Further, it shows that the Veteran reported being on disability for a non-service-connected condition, which goes against a determination that the Veteran’s service-connected disabilities, alone, rendered her unable to obtain or maintain substantially gainful employment.
As to the June 2008 VA treatment record that the Veteran asserted supports a TDIU, this note contains a statement from a provider that the Veteran was considered unemployable due to her physical problems and major depression, recurrent mental health disorder. This statement does not support the Veteran’s claim, but actually supports a similar finding as the private treatment note, that the Veteran was not unable to obtain or maintain substantially gainful employment at that time due solely to her service-connected disabilities. The Veteran is not service-connected for any mental conditions, and this statement by a VA geropsychiatrist clearly indicated that the Veteran’s psychiatric disability was a significant factor in her unemployment status.
Other evidence predating the appeal period does not show that the Veteran became unemployed or was ever unemployable solely due to her service-connected disabilities. The Veteran had submitted much evidence since becoming unemployed in 2002, alleging many conditions contributed to her unemployment. Among the conditions that she had asserted through lay statements and medical evidence contributed to her unemployability were her psychiatric, back, and knee conditions, all for which VA has denied service connection. Thus, the Veteran’s current assertions of having become unemployed in 2002 and having remained unemployed solely as a result of her service-connected foot and ankle disabilities are contradicted by years of evidence she submitted prior to the current appeal period while she was seeking service connection for other conditions. 
As to the Veteran’s current TDIU claim, the Board finds the evidence does not support the Veteran’s assertions that her service-connected bilateral foot and ankle conditions alone render her unable to secure or follow a substantially gainful occupation. VA examiners throughout the appeal period, at most, found that she would be limited occupationally in that she could not stand or weight-bear on her ankles and feet for prolonged periods of time. The Veteran repeatedly described how these conditions were not an issue for her until she was moved to a position by her employer in 2001 requiring her to stand for hours at a time. However, she worked for many years as a forklift operator, a position which she indicated did not have such extensive weight-bearing requirements on her ankles and feet. There is no evidence that she would be unable to work as a forklift operator, an occupation for which she has years of experience, solely due to her service-connected disabilities. Thus, while the evidence suggests that the Veteran has limitations, she is not prevented from obtaining or sustaining substantial gainful activity due to her service-connected feet or ankles, or any other service-connected condition.
The Board notes that the Veteran is considered competent to describe symptoms of her service-connected disabilities, as they are capable of lay observation. See Layno v. Brown, 6 Vet. App. 465, 469 (1994). Moreover, there is no dispute that the Veteran’s service-connected disabilities cause significant impairment. However, it is based on this impairment that the Veteran is assigned an 80 percent combined disability rating. After weighing all the evidence, including the Veteran’s statements, the Board finds the greatest probative value in the VA examinations and private and VA treatment records. 
While the Board does not wish to minimize the nature and extent of the Veteran’s overall disabilities, the evidence of record does not support her claim that her service-connected disabilities are sufficient to warrant the assignment of a TDIU. Although they produced some impairment, the evidence does not reflect gainful employment was precluded due to the Veteran’s service-connected feet, ankles, hypertension, or status post abdominal hysterectomy. 
(Continued on the next page)
 
Given the Veteran’s military experience and work experience, the Board cannot say that the Veteran’s service-connected disabilities prevent her from obtaining or maintaining substantially gainful employment in at least a work setting which would not require standing or walking for prolonged periods, much like her previous occupation as a fork lift driver. Accordingly, TDIU is not warranted.
 
MATTHEW W. BLACKWELDER
Veterans Law Judge
Board of Veterans’ Appeals
ATTORNEY FOR THE BOARD C. Davidoski, Associate Counsel